[Cite as *In re Adoption of M.R.P.*, 2022-Ohio-1631.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| IN RE: | : | |
| ADOPTION OF M.R.P. | : | CASE NO. CA2022-01-001 |
| | : | O P I N I O N<br>5/16/2022 |
| | : | |
| | : | |
| | : | |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
PROBATE DIVISION
Case No. 2020 5065

Melanie Walls Law, and Melanie B. Walls; Smith Meier & Webb, LPA, and Andrew P. Meier, for appellant.

Blake P. Somers LLC, and Jordan M. Feldkamp, for appellee.

**BYRNE, J.**

{¶1} This case is about a stepfather's petition to adopt his stepdaughter. A magistrate found that the petition should be denied, and a probate judge approved and adopted the magistrate's decision. The stepfather appealed. We affirm the probate court's decision.

## I. Child's Name

{¶2}    Stepfather's petition for adoption concerns M.R.M., a minor child.  The final initial "M." is Father's last name, which is also the child's last name.  M.R.M. is also referred to as "M.R.P." at various points in the record, including in the case caption.  The initial "P." stands for Stepfather's last name, but trial testimony established that M.R.M.'s legal name has never been changed from M.R.M. to M.R.P.  To avoid confusion, we will refer to M.R.M. as "Child."

## II. Factual and Procedural Background

{¶3}    Child was born to her natural parents, Mother and Father, in November 2016.  Father assisted with parenting from Child's birth and lived with Mother and Child until Mother and Father ended their relationship seven or eight months later.  After his relationship with Mother ended, Father continued to enjoy weekly visitation with Child, including overnight visitation.

{¶4}    At some point Mother and Stepfather began dating.  Stepfather became a part of Child's life when she was about one year old.  In October 2018, Stepfather and Mother moved in together, along with Child.  The couple were married in June 2020, and they have since had another child, Child's half sister.

{¶5}    Father's regular visits with Child continued until September 2019.  That month, during one of their exchanges of Child with Father, Mother and Stepfather perceived Father as behaving aggressively.  Father denied this and explained that he was shaking and unbalanced during the exchange because of his multiple sclerosis.  In any event, after this incident Mother began denying Father any visitation with Child.  Father continued to request contact with Child by sending both text messages and emails to Mother.  But Mother consistently denied Father any contact with Child.  At one point Father managed to have

FaceTime contact with Child, but Mother later responded to one of Father's text messages seeking further contact with Child by stating, "We're not doing FaceTime. Period. Do what you need to do to establish your shit with her & when the courts decide I HAVE to, then we will. We are trying to move on with our lives, leaving behind shitty people who don't care to take good care of my daughter." Another time Mother responded to one of Father's emails by stating, "You are disgusting and I wish you nothing but the misery you deserve. Don't ever contact me again." Father continued his attempts to see Child, but Mother continued to deny his attempts or failed to respond to Father's messages.

{¶6} This state of affairs remained unchanged until July 15, 2020, when Mother sent a text message to Father explaining that Stepfather wanted to adopt Child. Mother asked for Father's consent to the adoption. Father declined to give his consent. A few weeks later Father again asked Mother if he could see Child. Mother responded, but only by discussing the adoption process, and without referring to Father's request to see Child. When Father reiterated that he wanted to be in his daughter's life, Mother responded, "I've told you before what you need to do in order to do that. Regardless of the outcome of the adoption, you still do not have rights." During another text exchange, Mother again asked Father to "just end[] this and sign[]" for the adoption. Before Father responded, Mother texted four middle finger emojis, and then texted, "Ok maybe I'll just report fraud to Kentucky food stamps [crying laughing emoji]." Mother's next text stated, "Reported y'all [two crying laughing emojis]."

{¶7} On August 18, 2020, Stepfather filed a petition to adopt Child in the Warren County Court of Common Pleas, Probate Division. Father was served on October 10, 2020 at his place of employment but Father failed to file a response until January 7, 2021. Because R.C. 3107.07(K) requires a person opposing adoption to object to the petition for adoption within fourteen days of receipt of notice of the petition, Father's objection was

untimely. Following a hearing, the magistrate found that because of Father's failure to timely object, his consent was unnecessary for the adoption.

{¶8} At the hearing, the magistrate heard testimony from Stepfather, Mother, and Father. Stepfather and Mother testified to Child's close relationship with Stepfather as well as with her half sister. They noted that Stepfather has been in Child's life since she was one year old and that he has formed a strong bond with her. Stepfather and Mother testified that Child is enrolled in the "best schools in Mason," and that Stepfather has the financial resources to provide for Child.[1] Stepfather expressed his desire to provide Child with a stable and permanent home.

{¶9} Father testified that he lives in Erlanger, Kentucky, with his girlfriend, her two children, and their mutual son. Father is employed as an automobile mechanic and testified that he is able and desires to support Child financially. Father suffers from multiple sclerosis but receives treatment and testified that his illness does not affect his ability to care for his children. He does not have any mental health or drug dependency issues. Following Mother's denial of visitation, Father repeatedly texted and emailed Mother requesting to see Child. These messages were admitted as exhibits. Father at one point tried to initiate a child support action in Kentucky, but it was dismissed for failure of service. Father testified he did not know how to serve Mother because she and Stepfather moved after denying Father visitation and they declined to share their (and Child's) new address with him.

{¶10} Following the hearing, the magistrate issued a written decision finding that adoption was not in Child's best interest. Stepfather timely objected to the magistrate's decision, and the probate court then considered the matter. In its decision, the probate court also found that adoption was not in Child's best interest, and that Stepfather's

---

1. The reference to the "best schools in Mason" was a reference to a preschool, as Child was not yet Kindergarten-age at the time.

objections were therefore not well taken. The probate court overruled the objections and approved and adopted the magistrate's decision as an order of the court.

### III. Law and Analysis

{¶11} Stepfather now appeals, raising the following single assignment of error:

{¶12} THE PROBATE COURT ERRED IN OVERRULING THE PETITION FOR ADOPTION.

{¶13} Stepfather makes two distinct arguments in support of his conclusion that the probate court erred in overruling his petition for adoption. First, he argues that the probate court failed to properly hold Father to his burden of providing evidence in support of denying the petition. Second, he argues that granting the adoption is in the best interest of Child, and that in making its contrary determination, the probate court inappropriately considered factors not listed in R.C. 3107.161(B). We disagree.

### A. Applicable Law

{¶14} R.C. 3107.14(C) provides that a probate court may issue a final or interlocutory decree of adoption "if, at the conclusion of the hearing [on the petition for adoption], the court finds that the required consents have been obtained or excused and that the adoption is in the best interest of the person sought to be adopted as supported by the evidence * * * ." Thus, an adoption proceeding is a two-step process involving two phases: (1) the consent phase, and (2) the best interest phase. See *In re Adoption of Jordan*, 72 Ohio App.3d 638, 645 (12th Dist.1991).

### 1. The Consent Phase

{¶15} The right of natural parents to the care and custody of their child is one of the most precious and fundamental in law. *In re Adoption of C.M.F.*, 12th Dist. Butler Nos. CA2013-06-090 and CA2013-06-091, 2013-Ohio-4719, ¶ 8. An adoption permanently terminates those parental rights of a natural parent. *In re L.C.W.*, 12th Dist. Butler No.

CA2014-08-169, 2015-Ohio-61, ¶ 10. Thus, Ohio law requires parental consent to an adoption unless a specific statutory exception exists. *In re Adoption of C.E.S.*, 12th Dist. Butler Nos. CA2020-07-069, CA2020-07-070, and CA2020-07-071, 2020-Ohio-6902, ¶ 19.

{¶16} There are multiple exceptions to the parental consent requirement. This case involves the exception found in R.C. 3107.07(K). That statute provides that consent to an adoption is not required from a " * * * person given notice of the petition pursuant to division (A)(1) of section 3107.11 of the Revised Code that fails to file an objection to the petition within fourteen days after proof is filed pursuant to division (B) of that section that the notice was given." Here, the probate court determined Father's consent to the adoption was not required because he failed to timely object to the adoption petition. *See* R.C. 3107.07(K). This determination has not been contested by Father, so we need not address the consent requirement further.

**2. The Best Interest Phase**

{¶17} Even if a probate court determines that a parent's consent is not required, the court must still make a separate determination that the adoption is in the child's best interest. R.C. 3107.14(C); *In re Jordan*, 72 Ohio App.3d at 645. A probate court's determination of what is in the best interest of a child in an adoption proceeding must be made after consideration of the factors provided in R.C. 3107.161(B). *In re Adoption of A.M.L.*, 12th Dist. Warren No. CA2015-01-004, 2015-Ohio-2224, at ¶ 9. According to that statute,

> the court shall consider all relevant factors including, but not limited to, all of the following:
>
> > (1) The least detrimental available alternative for safeguarding the child's growth and development;
> >
> > (2) The age and health of the child at the time the best interest determination is made and, if applicable, at the time the child was removed from the home;

(3) The wishes of the child in any case in which the child's age and maturity makes this feasible;

(4) The duration of the separation of the child from a parent;

(5) Whether the child will be able to enter into a more stable and permanent family relationship, taking into account the conditions of the child's current placement, the likelihood of future placements, and the results of prior placements;

(6) The likelihood of safe reunification with a parent within a reasonable period of time;

(7) The importance of providing permanency, stability, and continuity of relationships for the child;

(8) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(9) The child's adjustment to the child's current home, school, and community;

(10) The mental and physical health of all persons involved in the situation;

(11) Whether any person involved in the situation has been convicted of, pleaded guilty to, or accused of any criminal offense involving any act that resulted in a child being abused or neglected [or other specific crimes].

R.C. 3107.161(B).

### 3. Burden of Providing Material Evidence and Burden of Proof

{¶18} A statute, R.C. 3107.161(C), provides that "A person who contests an adoption has the burden of providing the court material evidence needed to determine what is in the best interest of the child and must establish that the child's current placement is not the least detrimental available alternative." This statute imposes two burdens. First, the person opposing adoption has the *burden of providing material evidence* with regard to

the ultimate *best interest* question. R.C. 3107.161(C). Second, the person opposing adoption also has the *burden to establish* that the child's placement is "not the *least detrimental available alternative*." (Emphasis added.) *Id.* The "least detrimental available alternative" means "the alternative that would have the least long-term negative impact on the child." R.C. 3107.161(A); *In re Adoption of E.G.C.*, 12th Dist. Butler No. CA2021-07-022, 2021-Ohio-4178, ¶ 17; *In re Adoption of A.L.S.*, 12th Dist. Butler No. CA2017-09-146, 2018-Ohio-507, ¶ 33; *In re A.M.L.* at ¶ 10.

{¶19} That said, we have consistently stated that despite the burdens imposed on the person *opposing* adoption by R.C. 3107.161(C), the person *seeking* adoption ultimately retains the *burden of proving that adoption is in the best interest of the child*. *In re E.G.C.* at ¶ 17; *In re A.L.S.* at ¶ 33; *In re A.M.L.* at ¶ 10. Several of our sister districts agree. *E.g., In re H.T.*, 3d Dist. Logan No. 8-17-57, 2018-Ohio-2806, ¶ 31; *In re M.R.M.*, 7th Dist. Mahoning No. 17 MA 0088, 2017-Ohio-7710, ¶ 49-51; *In re Adoption of Brianna Marie D.*, 6th Dist. Lucas No. L-04-1367, 2005-Ohio-797, ¶ 36-38. The parties acknowledge these legal principles apply in this case.

### B. Standard of Review

{¶20} Adoption matters are decided on a case-by-case basis through the exercise of the discretion granted a probate court to determine what is in the best interest of the child to be adopted. *In re Adoption of Cotner*, 12th Dist. Fayette Nos. CA2002-02-004 and CA2002-02-005, 2002-Ohio-5145, ¶ 5. We will reverse a probate court's best interest determination only if we find an abuse of the court's discretion. *Id.* at ¶ 7. The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's decision is unreasonable, arbitrary, or unconscionable. *In re Adoption of Charles B*, 50 Ohio St.3d 88, 94 (1990). An appellate court will not substitute its judgment for that of the probate court when competent, credible evidence supports the probate court's decision.

*Cotner* at ¶ 8.

## C. Analysis

{¶21}  As stated above, Stepfather supports his appeal with two main arguments. We will address those arguments separately.

### 1. Father's Burden of Providing Material Evidence Regarding Best Interest

{¶22}  Stepfather argues that the probate court failed to hold Father to his burden of providing material evidence that denying the petition for adoption would be in Child's best interest.  Stepfather states that Father "did not provide material evidence" about best interest and that Father's testimony instead "focused on his justification for the lack of communication with [Child]."  Stepfather is mistaken.

{¶23}  Material evidence is "[e]vidence having some logical connection with the facts of the case or the legal issues presented."  *Black's Law Dictionary* (11th Ed.2019).  While Stepfather characterizes Father's testimony as having "focused" on his justification for his lack of communication with Child, the record shows that Father's testimony addressed much more than this one limited topic.  For example, Father testified about his home and the space that could be available for Child to have her own room; his relationships with his girlfriend's children and his other children; his employment as an automotive mechanic and his ability to financially contribute to Child's upbringing; his education and his willingness to help with Child's education; his interaction with Child when they lived together with Mother; his interaction with Child after his relationship with Mother ended, including regular overnight visits; the incident that led Mother to unilaterally terminate his visitation and contact with Child; his ongoing efforts to see Child after Mother's unilateral decision to terminate his visitation and contact with Child; his initiation of an action in Kentucky to establish child support payments for Child and the reasons for that action's dismissal; his opposition to Child's adoption by Stepfather; his acceptance of Stepfather's role in Child's

life; his desire also to be in Child's life as her father; his desire for Child to live in a happy and loving environment; his belief that his multiple sclerosis would not negatively impact his ability to care for Child; his willingness to take things as slowly or quickly as needed when reintroduced to Child; his lack of criminal convictions and drug use; his reasons for not pursuing further legal action until recently; and more.  In fact, Father provided testimony touching on all eleven of the factors listed in R.C. 3107.161(B).

{¶24}  Nor was it improper for Father to testify about the reasons why he had not seen or communicated with Child in nearly two years.  R.C. 3107.161(B) specifically states that a court is to consider "all relevant factors including, but not limited to," the eleven factors listed in the statute.  The reasons for Father's lack of communication with Child were relevant to Father's opposition to the adoption petition, in general.  These reasons were also relevant to several specific factors, including especially factor 4, "the duration of the separation of the child from a parent."

{¶25}  In other words, Father provided material evidence, in the form of testimony, related to the best interest factors that the probate court had to analyze under R.C. 3107.161(B).  Stepfather's assertion that Father "did not provide material evidence of what is in the best interest of the child" is simply incorrect.  Stepfather may disagree with the conclusions the probate court drew based on the material evidence offered by Father, but on this record we cannot say that Father failed to meet his burden of providing material evidence regarding best interest under R.C. 3107.161(C).

### 2. Father's Burden Regarding Least Detrimental Available Alternative and Stepfather's Burden Regarding Best Interest

{¶26}  Stepfather argues that Father failed to meet his burden of establishing, with clear and convincing evidence, that Child's "placement" with Stepfather was not the least detrimental available alternative.  In making this argument, Stepfather's brief states that

> * * * the testimony established that maintaining placement with Mother and Stepfather would have the least long-term negative impact on [Child]. Mother and Stepfather testified that [Child] has developed a strong bond with Stepfather and her half-sister. Stepfather has been involved in [Child's] life since she was only one year old. Moreover, Father has failed to establish any parental rights in the juvenile court and has had no contact with [Child] since September of 2019. Therefore, Father failed to satisfy his burden.

Stepfather frames a very limited choice: either the least detrimental alternative was for Stepfather (and not Father) to be in Child's life, or for Father (and not Stepfather) to be in Child's life. But this is a false choice. There was another, third option: Stepfather could remain in Child's life, but the petition of adoption could be denied, allowing Child the opportunity to develop and maintain a relationship with Father, too.[2] This alternative is the one that the magistrate clearly had in mind when she concluded her decision by stating, "It is not disputed that [Child] has a loving and caring relationship with [Stepfather]. However, she deserves the opportunity to know the biological Father who loves her and has tried for two (2) years to see her." The probate court confirmed the magistrate's understanding that the alternatives before the court were not as limited at Stepfather contends when it stated that "It is evident that [Child] would still benefit from the relationship with her biological Father." The magistrate and probate court properly analyzed the "least detrimental available alternative" issue with this third alternative in mind.

{¶27} Having corrected Stepfather's too limited framing of the alternatives before the probate court, we now move on to the question of whether Father met his burden of establishing that denying Stepfather's adoption petition was the least detrimental available alternative and whether Stepfather met his burden of proving that granting the adoption petition was in Child's best interest. These are related questions that we analyze together.

---

2. In fact, this third option was the existing state of affairs at the time. Child lived with Stepfather and Mother, and Father was free to pursue options to address Mother's refusal to allow him to see Child.

- 11 -

{¶28} Neither the magistrate's decision nor the probate court's decision adopting and approving that decision included detailed analysis of each of the R.C. 3107.161(B) best interest factors. But while including such a detailed, factor-by-factor analysis is the best practice (and a practice we encourage), a probate court is not required to enumerate its findings on each factor. *In re A.M.L.* at ¶ 11. Instead, the probate court's decision must clearly indicate that it considered the statutory factors provided in R.C. 3107.161(B). *Id.* Here, the probate court explicitly stated that it "considered the testimony and evidence as well as the statutory factors outlined in R.C. 3107.161." The court also discussed testimony about a number of factual issues relevant to those statutory best interest factors. For example, the probate court, after listing the R.C. 3107.161(B) factors, described Father's attempts to have contact with Child (relevant to factors 1, 4, 5, and 8), Father's lack of criminal history (factor 11), Father's testimony that he does not abuse drugs or alcohol (factors 1, 2, and 10), Father's employment (factors 1, 7, and 8), Father's willingness to provide Child with a safe and loving environment (factors 1, 5, 6, 7, and 8), and more. Given the above, we find that the probate court did in fact consider the statutory best interest factors.

{¶29} In order to determine whether the probate court abused its discretion in finding that Child's adoption by Stepfather was not in Child's best interest, we have reviewed the evidence presented at the hearing. The following summarizes that evidence with respect to the R.C. 3107.161(B) best interest factors.

**(1) The least detrimental available alternative for safeguarding the child's growth and development.**

{¶30} Stepfather produced evidence that he (and Mother) supported Child's growth and development. They provide Child with educational opportunities, a safe home, family interaction, and more.

{¶31} Father produced evidence that he and Child had a positive relationship with each other before Mother denied further visitation or contact. Father testified that his home is appropriate for Child, and she will have her own room. Father is willing to financially contribute to Child's upbringing, to contribute to her education, and to resume his interaction with Child as slowly or quickly as needed. Father presented evidence that he takes his parental responsibility seriously and wants to be a father to Child. Nothing in the record suggests that denying the adoption would harm Child's growth and development.

**(2) The age and health of the child at the time the best interest determination is made and, if applicable, at the time the child was removed from the home.**

{¶32} Child was four years old and in good health at the time of the adoption hearing. Child's eczema is treated and is not a significant factor in this analysis.

**(3) The wishes of the child in any case in which the child's age and maturity makes this feasible.**

{¶33} There was no evidence presented on this factor, given Child's young age.

**(4) The duration of the separation of the child from a parent.**

{¶34} There was no evidence that Child was ever separated from Stepfather once he moved in with Mother.

{¶35} Father left Child's home when she was seven or eight months old but continued to have regular visitation with her until she was a few months shy of three years old. In October 2019 Father had a FaceTime contact with Child. Father had no other contact with Child before the adoption hearing because Mother denied all of his attempts at contact. Father repeatedly called and texted Mother over many months requesting contact with Child, but Mother always denied his requests.

**(5) Whether the child will be able to enter into a more stable and permanent family relationship, taking into account the conditions of the child's current placement, the likelihood of future placements, and the results of prior placements.**

{¶36} Child has lived with Mother since her birth. Child has lived with Stepfather, too, since he moved in with Mother in October 2019. Child has stable relationships with both of them, as well as her half sister.

{¶37} Child lived with Father as well for the first seven or eight months of her life. There is no evidence that Child's maintaining a relationship with Father would destabilize or undermine her relationship with Stepfather or Mother. On the contrary, the evidence reflects that Father does not resent Child's relationship with Stepfather and would not undermine that relationship. Father testified that he plays an active role in raising his and his girlfriend's children, and that he would do the same for Child.[3]

**(6) The likelihood of safe reunification with a parent within a reasonable period of time.**

{¶38} No evidence suggests that Child cannot be reunified with Father or that the reunification would be unsafe in any way. Father expressed a willingness to take the time necessary to reestablish his relationship with Child appropriately, given the length of their separation.

**(7) The importance of providing permanency, stability, and continuity of relationships for the child.**

{¶39} As noted above, there was no evidence presented that maintaining a relationship with Father would undermine Child's permanency, stability, and continuity of relationships with Stepfather and Mother. Again, Father testified that he appreciates Child's positive relationship with Stepfather and does not seek to undermine it. In fact, denial of the adoption petition encourages permanency, stability, and continuity of Child's relationships because denial will allow the opportunity for Child's and Father's relationship

---

3. Father also testified that he has a child who lives in Florida, and that he had visited her shortly before the hearing. There was additional testimony that Father has another child with whom he does not have contact, but the circumstances were not explained.

to be reestablished, after it was unilaterally terminated by Mother.

**(8) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest.**

{¶40}  Child has positive relationships with Mother and Stepfather and her half sister. Father's girlfriend has three children and she and Father have one child together.  There was no evidence about Child's relationship with the other children in Father's home other than Father's testimony that he believes it would benefit Child to have a relationship with her paternal half siblings.  Child has a good and bonded relationship with Stepfather.  By all accounts, Father and Child had a good and bonded relationship before Mother refused to permit Father to visit with or contact Child.

**(9) The child's adjustment to the child's current home, school, and community.**

{¶41}  Child is well adjusted in her home with Stepfather and Mother.  As of the date of the hearing, she attended preschool and was preparing to attend Kindergarten the following school year.  There is no evidence of any maladjustment on the part of Child, other than the fact that Mother made the unilateral decision to terminate Child's interaction with Father.

**(10) The mental and physical health of all persons involved in the situation.**

{¶42}  No party has mental health issues, and only Father has a significant health issue, as he suffers from multiple sclerosis.  Father is receiving treatment for this condition and testified that it will not interfere with his ability to care for Child.  Stepfather and Mother presented no evidence to the contrary.

**(11) Whether any person involved in the situation has been convicted of, pleaded guilty to, or accused of any criminal offense involving any act that resulted in a child being abused or neglected [or other specific crimes listed in R.C. 3107.161(B)(11)].**

{¶43}  This factor is inapplicable.

{¶44} Based on our review of the evidence and statutory best interest factors enumerated above, we find that the probate court did not abuse its discretion when it found that Stepfather's objections to the magistrate's decision were not well taken and that Child's adoption by Stepfather was not in Child's best interest. The testimony demonstrated that Stepfather and Mother provided a safe, supportive, and positive environment for the Child. But Father established that granting Stepfather's adoption petition was not the least detrimental available alternative because doing so would terminate Child's opportunity to develop a similar safe, supportive, and positive relationship with Father (who had such a relationship with Child before Mother unilaterally terminated his contact with Child) and would also cut off Child from her stepsiblings, other paternal relatives, and Father's financial support. At the same time, Stepfather failed to prove that granting the petition was in Child's best interest.

{¶45} Stepfather argues that the probate court should not have considered Child's potential relationship with Father because the probate court had already determined that Father's consent was not needed per R.C. 3107.07(K). But the R.C. 3107.161(B) factors include several references to a child's relationship with a natural parent, including "(4) the duration of the separation of the child from a parent," "(6) the likelihood of safe reunification with a parent within a reasonable period of time," and "(8) the child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest." That Father's consent was not needed under R.C. 3107.07(K) does not remove those factors from the list of R.C. 3107.161(B) best interest factors the probate court must consider. Stepfather essentially asks us to rewrite R.C. 3107.161(B) to remove consideration of factors concerning a child's relationship with a parent from the statute when parental consent is not required under R.C. 3107.07(K). This we cannot do. *State v. Babyak*, 12th Dist. Madison No. CA2019-08-025, 2020-Ohio-

325, ¶ 13 ("[W]e are constrained to apply the statute as written and cannot rewrite the statute to say something it does not").

{¶46} Stepfather similarly argues that the probate court should not have considered the reasons Father provided for why he did not currently have a relationship with Child, because this was not one of the R.C. 3107.161(B) factors. Stepfather specifically states, "The probate court was required to solely consider the statutory factors under R.C. 3107.161(B)." But this misstates the law. The statute itself is clear that "the court shall consider *all relevant factors including, but not limited to*" the list enumerated in R.C. 3107.161(B)(1)-(11). (Emphasis added.) R.C. 3107.161(B). Stepfather identifies no evidence relied on by the probate court which is outside the statutory rubric or inappropriate for consideration.

{¶47} The facts of this case are very similar to those of *In re Adoption of L.G.*, 6th Dist. Sandusky No. S-19-013, 2019-Ohio-2422. In that case, the appellant was the child's stepfather, and was married to the child's mother. The appellee was the child's biological father, and suffered from multiple sclerosis and other health issues. The father and mother were never married, but the father enjoyed regular visitation for most of the child's early life until the mother began denying him visitation following a criminal charge he received. The stepfather filed a petition of adoption, and the magistrate held that the father's consent was not required. The probate court affirmed and adopted the magistrate's decision. A best interest hearing was held.

{¶48} The probate court in the *L.G.* case reasoned that if the adoption was not granted, the child would still live with the mother, stepfather, and her half sister, and would go to the same school and doctor and would have the same friends. *Id.* ¶ 21. After reviewing the statutory best interest factors, the court determined it was not in the best interest of the child for the adoption to be granted, "as it was in the best interest of the child

to maintain a relationship with both sides of her family." *Id.* at ¶ 46. The stepfather then appealed, arguing that the father did not present meaningful evidence to satisfy his burden that the adoption was not in the child's best interest, but instead presented evidence why he had been unable to exercise visitation. *Id.* At ¶ 51.

{¶49} The Sixth Appellate District found that the probate court had not abused its discretion, explaining:

> A review of the record shows stepfather presented an abundance of evidence that he loves and cares for L.G. Father did not challenge the adoption petition on the basis of stepfather's ability to care for and support L.G. Rather, father offered evidence of his efforts and grandmother's efforts to visit with L.G., and mother's refusal to allow visits for the past year with father or his family * * *. The evidence reveals father and grandmother expressed a willingness to play a role in L.G.'s life, but were denied the opportunity by mother, who chose to terminate visits in June 2016. Father also presented evidence concerning his health issues, the progress he has made, and his outlook for the future.

*Id.* at ¶ 61. The Sixth District's reasoning applies in the case before us.

{¶50} The Tenth Appellate District considered another very similar case, *In re B.M.S.*, 10th Dist. Franklin No. 10AP-748, 2011-Ohio-714. In that case, the stepfather appealed the probate court's denial of his petition for adoption. The court found that the mother had actively denied the father visitation, and that the father had consistently requested to see his children through phone calls. *Id.* at ¶ 20. Testimony showed that the stepfather and mother provided a loving and stable home and that the children were "thriving and well-adjusted." *Id.* at ¶ 21. However, the Tenth District ultimately affirmed the probate court's determination that adoption was not in the children's best interest:

> [Father's] evidence concerning his ability to be a positive influence in the boys' lives supports the court's conclusion that adoption was not the least detrimental available alternative. Rather, adoption and the loss of their father's involvement in their lives would be more detrimental than [father's] presence and influence through regular visitation and support. * * * While

the children and [father] had been separated for a long time, the separation was not entirely the fault of [father], who had made many attempts to see them and demonstrated his willingness and ability to maintain contact with them, if allowed. There was evidence that with cooperation from all parties, the relationship between appellee and his children could be a consistent and positive one.

*Id.* at ¶ 25. The court continued:

[M]any factors—[stepfather's] positive influence, a loving and supportive home and community, and the boys' adjustment to all aspects of their life with [stepfather] and [mother]—favor adoption by [stepfather]. Neither we, nor the trial court, may consider these positive factors in a vacuum, however. By weighing these factors against the negative effect of losing their relationship with their biological father, * * * the trial court did not abuse its discretion by concluding that the adoption was not in the best interest of the children.

*Id.* at ¶ 26.

{¶51} As with the Sixth District's reasoning in *L.G.*, we agree with the Tenth District's reasoning in *B.M.S.* We find that the probate court did not abuse its discretion in overruling Stepfather's objections to the magistrate's decision and in denying Stepfather's petition for adoption. Accordingly, Stepfather's sole assignment of error is overruled.

{¶52} Judgment affirmed.

M. POWELL, P.J., and HENDRICKSON, J., concur.