[Cite as *In re Adoption of E.G.C.*, 2023-Ohio-3563.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY

IN RE:                                          :
                                                            CASE NO. CA2023-05-011
    THE ADOPTION OF E.G.C.            :
                                                            O P I N I O N
                                                :           10/2/2023

                                                :

                                                :

                                                :


APPEAL FROM CLINTON COUNTY COURT OF COMMON PLEAS
PROBATE DIVISION
Case No. 20195020


Smith, Meier & Webb, LPA, and Chase T. Kirby and Andrew P. Meier, for appellant.

Peterson Law Office, and Shaun D. Peterson, for appellee.


**M. POWELL, J.**

{¶ 1}  Appellant, the biological father of E.G.C., appeals a decision of the Clinton County Court of Common Pleas granting an adoption petition filed by the child's stepfather.

{¶ 2}  E.G.C. was born in November 2012.  Her parents were unmarried, but lived together for approximately the first year and a half of the child's life.  After the parents' relationship ended, the child lived with Mother, but visited regularly with Father and spent

time with Father's extended family. Mother and Stepfather began dating in early 2015 when the child was two years old.

{¶ 3} According to Mother, around June 2017, she questioned Father regarding accusations of inappropriate behavior she had learned from Father's then-wife, which included Father showering with the child and viewing child pornography. Mother stated that shortly after she questioned Father about these accusations, he left the state. Father indicated that he moved to Pennsylvania to help his mother with her medical issues. Father has not seen the child since this time.

{¶ 4} Mother and Stepfather married in June 2018, and on August 27, 2019, Stepfather filed a petition to adopt the child. Father contested the petition, and after a lengthy procedural history involving several appeals to this court, the trial court determined Father's consent to the adoption was not required because he failed, without justifiable cause, to visit the child in the one year preceding the petition. This court affirmed that determination on appeal. *In re E.G.C.*, 12th Dist. Clinton No. CA2022-03-008, 2022-Ohio-2381.

{¶ 5} After a hearing on the best interest issue, the trial court determined that the adoption was in the best interest of the child and granted the Stepfather's petition. Father now appeals this decision and raises the following assignment of error for our review:

{¶ 6} THE PROBATE COURT ERRED BY GRANTING THE PETITION FOR ADOPTION

{¶ 7} In Ohio, adoption involves a two-step process: a consent phase and a best interest phase. R.C. 3107.14(C); *In re Adoption of Jordan*, 72 Ohio App.3d 638, 645 (12th Dist.1991). Once the required consents have been obtained or excused, the court must then determine whether the adoption is in the child's best interest. *Id.* In deciding whether an adoption is in the child's best interest, the court must consider the factors provided in

R.C. 3107.161(B). This statute provides:

> [T]he court shall consider all relevant factors, including, but not limited to, all of the following:
>
> (1) The least detrimental available alternative for safeguarding the child's growth and development;
>
> (2) The age and health of the child at the time the best interest determination is made and, if applicable, at the time the child was removed from the home;
>
> (3) The wishes of the child in any case in which the child's age and maturity makes this feasible;
>
> (4) The duration of the separation of the child from a parent;
>
> (5) Whether the child will be able to enter into a more stable and permanent family relationship, taking into account the conditions of the child's current placement, the likelihood of future placements, and the results of prior placements;
>
> (6) The likelihood of safe reunification with a parent within a reasonable period of time;
>
> (7) The importance of providing permanency, stability, and continuity of relationships for the child;
>
> (8) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
>
> (9) The child's adjustment to the child's current home, school, and community;
>
> (10) The mental and physical health of all persons involved in the situation;
>
> (11) Whether any person involved in the situation has been convicted of, pleaded guilty to, or accused of any criminal offense involving any act that resulted in a child being abused or neglected [or other specific crimes].

{¶ 8} "A person who contests an adoption has the burden of providing the court material evidence needed to determine what is in the best interest of the child and must establish that the child's current placement is not the least detrimental available alternative."

R.C. 3107.161(C). As relevant to adoption, "'the least detrimental available alternative' means the alternative that would have the least long-term negative impact on the child." R.C. 3107.161.

{¶ 9} "The least detrimental available alternative" is only one of the 11 enumerated best interest factors listed in the statute. However, that factor is given special status, as it is a factor upon which the person contesting the adoption bears the burden of proof pursuant to R.C. 3107.161(C). Nonetheless, the adoption petitioner retains the overall burden of proving that adoption is in the best interest of the child. *In re Adoption of M.R.P.*, 12th Dist. Warren No. CA2022-01-001, 2022-Ohio-1631, ¶ 19.

{¶ 10} On appeal, Father argues that the court erred in determining both that the adoption was in the child's best interest and in failing to find that that the child's current placement is not the least detrimental alternative. This court may reverse a trial court's decision on an adoption petition only when we find that the trial court abused its discretion. *In re Adoption of Cotner*, 12th Dist. Fayette Nos. CA2002-02-004 and CA2022-02-005, 2002-Ohio-5145, ¶ 5. An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's decision is unreasonable, arbitrary, or unconscionable. *Id.* at ¶ 8.

{¶ 11} At the hearing, Stepfather testified that the child is now 10 years old and that he has been part of her life since shortly after the she turned two years old. Stepfather and child spend time together, she calls him "daddy," and considers him to be her father. The child spends time with Stepfather's extended family at family get-togethers. Mother and Stepfather have a six-year-old son and the child is very bonded to her brother.

{¶ 12} Mother testified that she and Stepfather began dating in February 2015 and began living together eight to nine months later. She stated that Stepfather is "dad" to the child. She testified that Father last saw the child in 2017 when she accused him of

inappropriate behavior with the child, and shortly after that conversation, Father left the state and went to Pennsylvania. She agreed that she was the one who "cut-off" contact with Father and his family around that time, and that she blocked them from her Facebook account, but indicated that Father did not try to contact her and to maintain a relationship with the child. According to Mother, her phone number remained the same and Father and his family knew where she lived. Father did not contact Mother until after the adoption petition was filed.

{¶ 13} Mother also testified and provided medical records regarding the child's medical conditions. E.G.C. has been diagnosed with polymicrogyria, a disorder which involves abnormal cells in part of her brain. She has been diagnosed with epilepsy, parasomnia (trouble sleeping), adjustment disorder, eye problems and short-term memory problems. Both Mother and Stepfather indicated that if the court denied the adoption, and allowed contact with Father, it would be detrimental to the child because she has an adjustment disorder. The child does not do well in different situations, becomes upset and is not able to calm down, sometimes for an entire day. Mother indicated that any changes in the child's normal day-to-day activities or major changes to routine are very hard for her.

{¶ 14} Father testified that he had a positive relationship with the child from birth until she was around four years old. He indicated that after he and Mother ended their relationship, visitation was an informal arrangement, initially every other weekend with some days in between. He testified that as time passed and Mother and Stepfather's relationship became serious, his time with the child slowly started "going down." He disputed Mother's claim that she discussed inappropriate behavior with him and explained that he moved to Pennsylvania to take care of his mother after she was in a coma. He estimated he was in Pennsylvania for 14 to 16 months and that he returned in June 2019.

{¶ 15} Father indicated that he is willing to do whatever is needed and in the best

interest of the child regarding parenting time with her. He stated that a relationship with him and with his family would be positive because they all had a good relationship in the past. Father testified that he believes the child would "run into his arms" if she saw him again.

{¶ 16} The child's paternal grandfather also testified regarding the positive relationship he and the child had in the past. He indicated that he used to see her frequently and babysat a couple of times after Father left for Pennsylvania, but has not seen the child since around June 2017. Likewise, the paternal great-aunt testified to the positive relationship the child had with Father's family in the past. The great-aunt indicated that she last saw the child in 2017 in a grocery store. She stated that the child did not recognize her, but did recognize her daughter and called the daughter by name.

{¶ 17} The trial court determined that the child has a close relationship with Mother, Stepfather, her younger brother, and extended family members. She is well-adjusted to home, school and community. The court further indicated that the child has had no contact with Father or his family for six years, and that for over half of her life, Stepfather has been "dad" or "daddy" to her. The court recognized that the child was once closely bonded to her paternal grandfather and had parenting time with her father, but that she was four years old at that time. The court stated that it had considered the best interest factors, the testimony and evidence, and determined that granting the petition was in the child's best interest.

{¶ 18} As mentioned, Father contests the trial court's determination of best interest and the least detrimental alternative. Specifically, he contends that the trial court failed to consider that four of the six years he did not have contact with the child were during the current court case and that during the other two years, Mother was actively denying contact. We note that the reason a parent does not currently have a relationship with their child is a relevant consideration at an adoption hearing. *M.R.P.*, 2022-Ohio-1631 at ¶ 46.

- 6 -

{¶ 19} Although not mentioned specifically in the opinion, the trial court heard all the evidence and was aware of the facts presented. Moreover, although a considerable amount of Father's lack of contact with the child was during the court proceedings, it was his over two-year period of failing to contact the child and assert his parental rights that led to the current situation. As this court noted in the previous appeal in determining that Father's consent was not required, Father had "a number of alternatives at his disposal" to communicate and maintain a relationship with the child, but did none of those things, and "showed a complete lack of interest in E.G.C. until Stepfather filed his petition for adoption." *In re Adoption of E.G.C.*, 12th Dist. Clinton No. CA2022-03-008, 2022-Ohio-2381 at ¶ 18.

{¶ 20} Father further argues that the trial court failed to consider that it was in the child's best interest to have a relationship with Father and his family and that granting the adoption was not the least detrimental alternative because both he and Stepfather can be in the child's life without Father affecting Stepfather's relationship with the child or her current home situation. In support, he argues the trial court failed to consider a recent case from this court that supports his position, *In re Adoption of M.R.P.*, 12th Dist. Warren No. CA2022-01-001, 2022-Ohio-1631.

{¶ 21} In *M.R.P.*, this court determined that the trial court did not err in denying a stepfather's petition for adoption where the evidence showed that the stepfather and father could both continue to have a relationship with the child. *Id.* at ¶ 51. However, both the facts and procedural posture of that case were different from the case now before us. In *M.R.P.*, we were asked to determine whether the denial of the adoption petition was within the trial court's discretion. *Id.* at ¶ 13. In addition, the father's consent was not required in *M.R.P.* because he failed to timely respond to the petition, not because of an unjustifiable failure to contact the child. Id. at ¶ 7. Although there was a period of time that the father in *M.R.P.* did not have contact with the child, it was less than a year before the petition was

filed, and, during that time, the father kept trying to have a relationship with the child. *See id.* at ¶ 5-7.

{¶ 22} We note that courts frequently emphasize that in proceedings involving the custody and welfare of children, the power of the trial court to exercise discretion is peculiarly important. "Since the facts in each case will vary, and the advisability of permitting an adoption must be made on a case-by-case basis, the trial court must be allowed broad discretion in deciding an adoption petition." *In re Adoption of Charles B.*, 50 Ohio St.3d 88, 94 (1990).

{¶ 23} Parental rights decisions "present some of the most difficult and heart wrenching issues that courts are called to decide." *Putnam v. Putnam*, 4th Dist. Washington No. 00CA32, 2001-Ohio-2471 (Abele, P.J., concurring). In such cases, the trier of fact is in a far better position to observe the witnesses' demeanor and weigh their credibility. *Stephens v. Bertin*, 5th Dist. Stark No. 2006 CA 00052, 2006-Ohio-6401, ¶ 45. Although a court may have decided a case differently, "[w]hen applying an abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court." *In re Jane Doe 1*, 57 Ohio St.3d 135, 137-138 (1991); See also *In re Adoption of J.N.G.* 5th Dist. Stark No. 2010CA0025, 2010-Ohio-6399, ¶ 15; *H.R. v. L.R.*, 181 Ohio App.3d 837, 2009-Ohio-1665, ¶ 18 (10th Dist.).

{¶ 24} After reviewing the record, we find the trial court did not abuse its discretion in granting Stepfather's petition for adoption. It is apparent that the best interest analysis required the trial court to make a difficult decision. Mother and Stepfather have provided a stable, loving, and nurturing home for the child and Stepfather is "dad" to the child. Although Father and his family once had a relationship, and now again desire a relationship with the child, a considerable amount of time has passed. Although we recognize that the court proceedings are part of that time, it was Father's period of inaction for over two years that

broke the continuity of his relationship with the child. In addition, as discussed at the hearing, the child has a medical condition that makes change extremely difficult. Given the facts before us, and the considerable discretion afforded the trial court, we find competent, credible evidence supports the trial court's decision. *See M.R.P.*, 2022-Ohio-1631 at ¶ 20. Father's assignment of error is overruled.

{¶ 25} Judgment affirmed.

S. POWELL, P.J., and BYRNE, J., concur.