[Cite as *In re Adoption of B.M.H.M*, 2025-Ohio-1677.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY

IN THE MATTER OF THE ADOPTION
OF B.M.H.M.

:
:
:    C.A. No. 2025-CA-1
:
:    Trial Court Case No. 2023-5-020
:
:    (Appeal from Common Pleas Court-
:    Probate Division)
:
:

. . . . . . . . . . .

O P I N I O N

Rendered on May 9, 2025

. . . . . . . . . . .

GARY C. SCHAENGOLD, Attorney for Appellant

NICOLE L. POHLMAN, Attorney for Appellee

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Appellant Mother appeals from a judgment of the Darke County Court of Common Pleas, Probate Division, which granted Petitioners' request to adopt Mother's biological daughter, B.M.H.M. For the reasons that follow, we will affirm the judgment of the trial court.

I.      Course of Proceedings and Testimony

{¶ 2} B.M.H.M. was born in 2014.   In February 2016, maternal grandmother ("Grandmother") and her husband (collectively, "Petitioners") became the legal guardians of B.M.H.M. after Mother overdosed in front of her.

{¶ 3} On December 4, 2023, Petitioners filed a petition to adopt B.M.H.M. in the Darke County Court of Common Pleas, Probate Division.   Petitioners had previously adopted two of Mother's biological children.   According to the petition, the consent of the Mother was not required pursuant to R.C. 3107.07.   Father filed an affidavit consenting to the adoption of B.M.H.M.

{¶ 4} On April 23, 2024, a hearing on whether consent was required from Mother was held before a magistrate.   On April 30, 2024, the magistrate found that consent was not required because there had been no maintenance or support actually provided to B.M.H.M. by Mother.   No objections were filed to the magistrate's decision, and the trial court adopted the magistrate's decision.   Mother did not file an appeal from the consent determination.

{¶ 5} Petitioners filed a request that the probate court conduct an in-camera interview of B.M.H.M., which the magistrate scheduled for June 20, 2024.   The best interest hearing on the adoption petition was held before the magistrate on June 18, 2024. Several witnesses testified at the hearing.

{¶ 6} Susan Davis testified first.   She was a mental health counselor who specialized in play therapy.   Davis had seen B.M.H.M. weekly since Petitioners became

her guardians. Davis originally diagnosed B.M.H.M. with adjustment disorder but later diagnosed her with post-traumatic stress disorder (PTSD). Mother had not participated in the therapy Davis provided to B.M.H.M., but Petitioners had and followed her recommendations. Davis noticed that B.M.H.M. regressed in her behavior after failed interactions with Mother. According to Davis, B.M.H.M. was in a stable environment with Petitioners and felt stable but was confused why her siblings had been adopted but she had not. B.M.H.M. told Davis during the past three years that she wanted to be adopted by Petitioners. Davis believed it was important to B.M.H.M.'s mental health to be adopted by Petitioners. Davis stated that B.M.H.M. wanted a relationship with Mother and that a relationship between the two would be beneficial to B.M.H.M.

{¶ 7} Mother testified next at the best interest hearing. She lived about three hours away from where B.M.H.M. lived. Petitioners are Mother's biological mother and stepfather. Petitioners previously adopted two of Mother's other children. Mother admitted that she had had criminal convictions since 2016 and that she was found to have violated her probation as recently as 2022 or 2023. She testified that she had been clean and sober for the eight or nine months immediately preceding the best interest hearing but could not recall her date of sobriety. Mother did not currently have a bedroom for B.M.H.M., because Mother lived in transitional housing. She had married a man she met in drug treatment who had an extensive criminal history. Mother was gainfully employed and planned to eventually get adequate housing and look into mental health counselors for B.M.H.M. if she regained custody. Mother had not tested positive for drugs for several months despite being tested twice per week. She had completed parenting education

classes. Mother felt a closer bond to B.M.H.M. than to her other children and therefore did not want B.M.H.M. adopted like her other children. Mother believed B.M.H.M.'s relationships with one of her siblings and her maternal grandfather would suffer if the court granted the adoption.

{¶ 8} Grandmother testified next at the hearing. She had been married to Mother's stepfather since 2001. Grandmother was appointed guardian of B.M.H.M. in February 2016 when Mother overdosed. B.M.H.M. had asked Grandmother to adopt her, and Grandmother agreed because she wanted to give her stability. While B.M.H.M. wanted a relationship with Mother, she had not reacted well to Mother's past failed promises and relapses. Grandmother testified that she planned to encourage B.M.H.M. to have a relationship with Mother if B.M.H.M. was okay with it and it was safe. Petitioners had financial stability and a large home that allowed them to house two daughters over the age of 18 and five children, including B.M.H.M. They all spent a great amount of family time together. Grandmother was concerned that Mother would be unable to ensure that B.M.H.M. received her daily shots for her growth hormone deficiency and that she did her daily homework.

{¶ 9} Patricia Harr also testified during the best interest hearing. She worked as a case manager for Serenity Now, the facility where Mother received counseling while attempting to transition to sober living. At the time of the best interest hearing, Mother had been living there for about six months. According to Harr, Mother was at a stable point in her life, was gainfully employed, and regularly attended counseling. While Mother had struggled with time management, she was learning how to better manage her

time and had recently received assistance in starting to look for affordable housing.

{¶ 10} Maternal grandfather also testified at the hearing. He and his wife previously had adopted one of Mother's other biological children. Maternal grandfather had a tight relationship with B.M.H.M. until about three years before the best interest hearing. He wanted to spend more time with B.M.H.M. and have her spend more time with her brother, who he had previously adopted. Maternal grandfather did not yet trust Mother to have an unsupervised visit with her biological son. He believed it was in B.M.H.M.'s best interest to be adopted by Petitioners if they were willing to allow her to still have a relationship with Mother.

{¶ 11} On June 20, 2024, the magistrate held an in-camera interview with B.M.H.M. during which she expressed a clear desire to be adopted by Petitioners. On July 3, 2024, the magistrate issued a decision recommending that the adoption petition be granted. The magistrate considered the best interest factors in R.C. 3107.161(B) and found that granting the petition was in the best interest of B.M.H.M. Mother filed timely objections to the magistrate's decision. Mother argued that the adoption would undermine the relationship between B.M.H.M. and her biological brother, who had previously been adopted by maternal grandfather. Mother also contended that the magistrate had cut off her testimony about what steps she had taken to put herself in a better position to care for B.M.H.M. Finally, Mother believed the current placement was not the least detrimental available alternative. Petitioners responded by explaining how the factors in R.C. 3107.161(B) established that adoption was in the best interest of B.M.H.M.

{¶ 12} On October 23, 2024, the probate court issued a judgment entry in which it found that it was in the best interest of B.M.H.M. to grant the petition for adoption and that the current placement was the least detrimental alternative.   The court did not state whether it had overruled Mother's objections to the magistrate's decision.   Mother filed a notice of appeal from the trial court's entry.

{¶ 13} On November 13, 2024, we issued an order to show cause whether the October 23, 2024 entry was a final order despite the fact that the court had not expressly ruled on Mother's objections to the magistrate's decision.   Mother filed a response conceding that the probate court's order was not final.   We agreed with Mother and dismissed her appeal for lack of jurisdiction.

{¶ 14} On December 26, 2024, the probate court issued an amended judgment entry and decree of adoption.   The court overruled Mother's objections to the magistrate's decision, found that Petitioners' home was the least detrimental placement for B.M.H.M., and found that it was in the best interest of B.M.H.M. to grant the adoption petition.   Mother filed a timely appeal.

II.     The Trial Court Did Not Abuse Its Discretion by Granting the Petition for Adoption

{¶ 15} Mother raises the following assignment of error:

THE TRIAL COURT ERRED IN FINDING THAT IT WAS IN THE BEST INTEREST OF THE MINOR CHILD TO BE ADOPTED BY PETITIONERS.

{¶ 16} "The right of natural parents to the care and custody of their child is one of the most precious and fundamental in law." *In re Adoption of M.R.P.*, 2022-Ohio-1631, ¶ 15 (12th Dist.), citing *In re Adoption of C.M.F.*, 2013-Ohio-4719, ¶ 8 (12th Dist.). Such rights, however, "are not absolute, and a parent's natural rights are always subject to the ultimate welfare of the child." *In re M.W.*, 2020-Ohio-5199, ¶ 13 (10th Dist.), citing *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979). "Thus, in certain circumstances, the state may terminate the parental rights of natural parents when it is in the best interest of the child." *In re E.G.*, 2007-Ohio-3658, ¶ 8 (10th Dist.), citing *In re Harmon*, 2000 WL 1424829 (4th Dist. Sept. 25, 2000), and *In re Wise*, 96 Ohio App.3d 619, 624 (9th Dist. 1994). "Adoption terminates those fundamental rights." *In re Adoption of Masa*, 23 Ohio St.3d 163, 165 (1986), citing R.C. 3107.15(A)(1).

{¶ 17} "Since the facts in each case will vary, and the advisability of permitting an adoption must be made on a case-by-case basis, the trial court must be allowed broad discretion in making the determination." *In re Adoption of Charles B.*, 50 Ohio St.3d 88, 94 (1990). Therefore, we review a probate court's decision to grant an adoption petition under an abuse of discretion standard. A trial court abuses its discretion when its decision is "unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

{¶ 18} A probate court may issue a final decree of adoption if, at the conclusion of the hearing on the petition, the court finds that the required consents have been obtained or excused, and the adoption is in the best interest of the person sought to be adopted. R.C. 3107.14(C). Thus, an adoption proceeding is a two-step process involving two

phases: (1) the consent phase, and (2) the best interest phase.

**{¶ 19}** Father consented to the adoption. The probate court, after a consent hearing, found that Mother's consent was not required pursuant to R.C. 3107.07. Mother did not appeal that decision and did not raise any issues in this appeal regarding consent. Therefore, we will not address the issue of consent in this appeal.

**{¶ 20}** After the probate court found that Mother's consent was not required, the court was still required to make a separate determination whether the adoption was in B.M.H.M.'s best interest. The parties have different burdens in this analysis. R.C. 3107.161(C) provides: "A person who contests an adoption has the burden of providing the court material evidence needed to determine what is in the best interest of the child and must establish that the child's current placement is not the least detrimental available alternative." This statute imposed two burdens on Mother as the person contesting the adoption. First, Mother had the burden of providing material evidence with regard to the ultimate best interest question. *Id.* Second, Mother had the burden to establish that the child's current placement was "not the least detrimental available alternative." *Id.* Despite the two burdens placed on Mother by R.C. 3107.161(C), Petitioners, as those seeking the adoption, ultimately had the burden of proving that adoption was in the best interest of B.M.H.M. *In re Adoption of M.R.P.*, 2022-Ohio-1631, at ¶ 19 (12th Dist.) (citing a number of decisions from other districts).

**{¶ 21}** R.C. 3107.161(B) provides that:

When a court makes a determination in a contested adoption concerning the best interest of a child, the court shall consider all relevant

factors including, but not limited to, all of the following:

(1) The least detrimental available alternative for safeguarding the child's growth and development;

(2) The age and health of the child at the time the best interest determination is made and, if applicable, at the time the child was removed from the home;

(3) The wishes of the child in any case in which the child's age and maturity makes this feasible;

(4) The duration of the separation of the child from a parent;

(5) Whether the child will be able to enter into a more stable and permanent family relationship, taking into account the conditions of the child's current placement, the likelihood of future placements, and the results of prior placements;

(6) The likelihood of safe reunification with a parent within a reasonable period of time;

(7) The importance of providing permanency, stability, and continuity of relationships for the child;

(8) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(9) The child's adjustment to the child's current home, school, and community;

(10) The mental and physical health of all persons involved in the situation;

(11) Whether any person involved in the situation has been convicted of, pleaded guilty to, or accused of any criminal offense involving any act that resulted in a child being abused or neglected . . . .

{¶ 22} Mother contends that the trial court placed too much emphasis on Mother's past and not enough emphasis on Mother's present situation. Appellant's Brief, p. 7. According to Mother, she was doing well in rehab, had been sober for approximately nine months at the time of the best interest hearing, was gainfully employed, had begun the process to obtain independent living arrangements, was participating in weekly video calls with B.M.H.M. to maintain an established relationship, and was at a stable point in her life. Mother also contends that adoption would negatively impact B.M.H.M.'s relationships with B.M.H.M.'s maternal grandfather and her biological brother who lived with her maternal grandfather.

{¶ 23} The best interest factors in R.C. 3107.161(B)(1)-(11) clearly supported the trial court's finding that the adoption was in the best interest of B.M.H.M. At the time of the best interest hearing, B.M.H.M. was ten years old and had been living with Petitioners for eight years, since Mother overdosed in front of her. During this time, B.M.H.M. had been diagnosed with PTSD resulting from her early years with Mother. B.M.H.M.'s behavior also had regressed when Mother failed to fulfill her promises or had a drug relapse. While Mother appeared to have taken positive steps in her life during the nine months preceding the best interest hearing, this had not necessarily translated into

bettering the interest of B.M.H.M. While everyone appeared to agree that B.M.H.M. would benefit if she and Mother developed a positive relationship, this was in no way a certainty given Mother's past problems with maintaining sobriety and her problems at the time of the hearing with time management and not putting B.M.H.M.'s interests before her own. The record clearly establishes that the continued placement with Petitioners was the least detrimental alternative available. Further, while B.M.H.M. still faced obstacles with her growth hormone deficiency and her diagnosis of PTSD, Petitioners were focused on providing her with the resources she needed to overcome the obstacles in her life. B.M.H.M. struggled with the fact that Petitioners had adopted two of her siblings but not her. When she asked Petitioners to adopt her, they agreed. During the in-camera interview with the magistrate, B.M.H.M. explained why she wanted Petitioners to adopt her. B.M.H.M. sought the stability of a continued life with the Petitioners rather than the continued risk of having Mother attempt to regain custody. Everyone but Mother appeared to agree that this stability was in B.M.H.M.'s best interest.

{¶ 24} Mother primarily contends on appeal that the trial court focused too much on the past than on the actions Mother had taken recently. We do not agree. The trial court properly weighed all of the evidence before it and focused on the best interest of B.M.H.M. While we recognize Mother's recent efforts to improve her life and to show a desire to repair her role as a parent, "the goal of adoption in Ohio 'is to protect the best interest of the child.' " *In re Adoption of J.G.S.*, 2023-Ohio-1155, ¶ 19 (1st Dist.), quoting *In re Hitchcock*, 120 Ohio App.3d 88, 104 (8th Dist. 1996), citing *In re Adoption of Zschach*, 75 Ohio St.3d 648 (1996). "[T]he statutory framework and case law both

elevate the best interest of the child over the rights of others in an adoption proceeding." *Id.*, citing *In re Ridenour*, 61 Ohio St.3d 319, 322 (1991). A best interest determination must focus on the child, not the parent. *In re Awkal*, 95 Ohio App.3d 309, 315 (8th Dist. 1994) ("Both the best-interest determination and the determination that the child cannot be placed with either parent focus on the child, not the parent."); *Adoption of J.G.S.* at ¶ 19 ("While the magistrate acknowledged Father's progress, desires, and emphasis on his familial history, she properly centered J.G.S.'s welfare in her best-interest analysis.").

**{¶ 25}** The overwhelming evidence of record, when considered within the context of the factors set forth in R.C. 3107.161(B), establishes that Mother was not close to being ready to care for B.M.H.M., and there was no guarantee that she ever would be. B.M.H.M. had had her hopes dashed several times in the previous eight years due to failed promises made by Mother. These recurring failures by Mother led to regressive behavior by B.M.H.M. Mother explained that while she previously had consented to adoptions of three of her children, she did not consent to this adoption because she had a much closer bond with B.M.H.M. during the two years before she overdosed in front of her. Mother consistently focused on her own needs and desires rather than on the best interest of B.M.H.M. On the other hand, Petitioners had provided a loving, nurturing home to B.M.H.M. for eight years. In that same household, B.M.H.M. was able to develop relationships with two of her siblings. B.M.H.M. wanted the stability that would result from being adopted by Petitioners. While she and Petitioners were open to growing a relationship between Mother and B.M.H.M. if Mother continued to show positive signs of personal growth, it was not in the best interest of B.M.H.M. to have to sacrifice a

stable, nurturing life in return for a less-than-certain possibility that Mother could eventually get to where she needed to be in life.

**{¶ 26}** The overwhelming evidence establishes that granting Petitioners' adoption petition was in B.M.H.M.'s best interest.   Therefore, we cannot conclude the trial court abused its discretion by granting the adoption petition.

**{¶ 27}** The sole assignment of error is overruled.


III.     Conclusion

**{¶ 28}** Having overruled the assignment of error, we will affirm the judgment of the trial court.

. . . . . . . . . . . . .


TUCKER, J. and HANSEMAN, J., concur.