[Cite as *In re Adoption of J.A.M.*, 2022-Ohio-2313.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**GREENE COUNTY**

IN THE MATTER OF THE ADOPTION
OF J.A.M.

:
:
:
:
:
:
:
:
:
:
:
:

Appellate Case No. 2022-CA-14

Trial Court Case No. 11285AD

(Appeal from Common Pleas
Court – Probate Division)

. . . . . . . . . . .

O P I N I O N

Rendered on the 1st day of July, 2022.

. . . . . . . . . .

MATTHEW C. SORG, Atty. Reg. No. 62971, 40 North Main Street, Suite 2700, Dayton, Ohio 45423
	Attorney for Appellant

KELLY M. SCHROEDER, Atty. Reg. No. 0080637, 1 South Main Street, Suite 1800, Dayton, Ohio 45402
	Attorney for Appellee

. . . . . . . . . . . . .

LEWIS, J.

**{¶ 1}** Petitioner-Appellant K.B.M., Stepmother of J.A.M., a minor, appeals from the probate court's judgment denying her petition to adopt J.A.M.[1]  For the reasons that follow, we affirm the probate court's judgment.

I.      Facts and Course of Proceedings

**{¶ 2}** J.A.M. was born in December 2008, and his sister was born in August 2010. J.A.M.'s sister has special needs.   Their father and mother had been in a relationship for approximately ten years but were never legally married.   The parents' relationship ended in 2011.   For the next several years, Mother and Father had an informal arrangement for parenting the children in which J.A.M. lived with Father and their daughter lived with Mother.   Both parents visited routinely with the other child not living with them.   Father married Stepmother in October 2017.   Stepmother lives with Father and J.A.M.

**{¶ 3}** In early 2020, Mother and Father signed an Agreed Entry that was adopted by the Juvenile Division of the Montgomery County Common Pleas Court in a March 9, 2020 decision and order.   Father was designated the legal, custodial, and residential parent of J.A.M.   Mother was designated the legal, custodial, and residential parent of their daughter.   The Agreed Entry contained the following paragraph:

There shall be no award of parenting time for either parent for the child not

in their respective custody.   Parents shall take notice of the Montgomery

County Juvenile Court Standard Order of Parenting Time attached hereto

and incorporated herein, but the provisions related to parenting time for

---

[1] In order to protect the identity of a minor child and to avoid confusion, we will refer to the individuals in this case by their relationship status with J.A.M.

school year, holidays, and summer shall not be enforced by and between the parties.

March 9, 2020 Decision and Order.

{¶ 4} Neither Father nor Mother made much effort to visit or communicate with the child living with the other parent after the Agreed Entry was adopted by the juvenile court. Mother believed that the language regarding no award of parenting time meant she was prohibited from having any contact or communication with J.A.M. Therefore, she had not seen J.A.M. in person since Christmas 2019.

{¶ 5} On August 5, 2021, Stepmother filed a petition to adopt J.A.M. in the Greene County Probate Court. After Mother filed objections to the petition, the probate court held an evidentiary hearing on the issue of whether Mother's consent to the proposed adoption was required. The court found that Mother's consent was not required, because Mother had "failed without justifiable cause to provide more than de minimis contact [with] J.A.M. for a period of at least one year immediately preceding the filing of the adoption petition." December 6, 2021 Decision, p. 9. The probate court then scheduled a separate hearing to determine whether the adoption was in the best interest of J.A.M.

{¶ 6} The best interest hearing was held on January 26, 2022. Father, Stepmother, and Mother testified at the hearing. On February 7, 2022, the probate court found that Stepmother had failed to prove that the proposed adoption was in J.A.M.'s best interest. Consequently, the court denied Stepmother's petition for adoption. Stepmother timely appealed from the probate court's judgment.

II.     The Probate Court Did Not Abuse Its Discretion When It Denied Stepmother's Petition to Adopt J.A.M.

{¶ 7} Stepmother's two assignments of error are interrelated and will be addressed together.   These two assignments of error state:

THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THAT APPELLEE SUSTAINED HER EVIDENTIARY BURDEN UNDER R.C. 3107.161(C) BECAUSE APPELLEE (1) FAILED TO PROVIDE THE COURT WITH MATERIAL EVIDENCE NEEDED TO DETERMINE THE BEST INTEREST OF THE CHILD AND (2) FAILED TO DEMONSTRATE THAT THE CHILD'S CURRENT PLACEMENT IS NOT THE LEAST DETRIMENTAL AVAILABLE ALTERNATIVE.

THE TRIAL COURT ABUSED ITS DISCRETION BY FINDING THAT APPELLANT'S PETITIONED ADOPTION OF J.A.M. IS NOT IN THE BEST INTEREST OF THE CHILD.

{¶ 8}   "The right of natural parents to the care and custody of their child is one of the most precious and fundamental in law."   *In re Adoption of M.R.P.*, 12th Dist. Warren No. CA2022-01-001, 2022-Ohio-1631, ¶ 15.   "Adoption terminates those fundamental rights."   *In re Adoption of Masa*, 23 Ohio St.3d 163, 165, 492 N.E.2d 140 (1986).   "Since the facts in each case will vary, and the advisability of permitting an adoption must be made on a case-by-case basis, the trial court must be allowed broad discretion in making the determination."   *In re Adoption of Charles B.*, 50 Ohio St.3d 88, 94, 552 N.E.2d 884

(1990). Therefore, we review a probate court's decision to grant or deny an adoption petition under an abuse of discretion standard. A trial court abuses its discretion when its decision is "unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 9} A probate court may issue a final decree of adoption if, at the conclusion of the hearing on the petition, the court finds that the required consents have been obtained or excused and the adoption is in the best interest of the person sought to be adopted. R.C. 3107.14(C). Thus, an adoption proceeding is a two-step process involving two phases: (1) the consent phase, and (2) the best interest phase.

{¶ 10} The probate court, after a consent hearing, found that Mother's consent was not required, because Mother had failed without justifiable cause to provide more than de minimis contact with J.A.M. for a period of at least one year immediately preceding the filing of the adoption petition. December 6, 2021 Decision, citing R.C. 3107.07(A). Mother did not appeal this decision and we will not address the consent issue in this appeal.

{¶ 11} Even though the probate court found that Mother's consent was not required, the court was still required to make a separate determination that the adoption was in J.A.M.'s best interest. The parties have different burdens in this analysis. R.C. 3107.161(C) provides: "A person who contests an adoption has the burden of providing the court material evidence needed to determine what is in the best interest of the child and must establish that the child's current placement is not the least detrimental available alternative." This statute imposed two burdens on Mother as the person contesting the

adoption. First, Mother had the burden of providing material evidence with regard to the ultimate best interest question. *Id.* Second, Mother also had the burden to establish that the child's current placement was "not the least detrimental available alternative." *Id.* Despite the two burdens placed on Mother by R.C. 3107.161(C), Stepmother, as the person seeking adoption, ultimately had the burden of proving that adoption was in the best interest of J.A.M. *In re Adoption of M.R.P.,* 12th Dist. Warren No. CA2022-01-001, 2022-Ohio-1631, at ¶ 19 (citing a number of decisions from sister districts).

{¶ 12} Stepmother contends that the trial court abused its discretion by finding that Mother had satisfied her burden to provide the probate court with material evidence needed to determine the best interest of J.A.M. According to Stepmother, the evidence provided by Mother "focused almost exclusively on the effect that the adoption might have on her and her family, not on J.A.M. himself." Stepmother's Appellate Brief, p. 11. Further, Stepmother stated that "[n]owhere in Mother's testimony did she indicate that having continued parental rights over J.A.M. would be in J.A.M.'s best interest, especially when compared to the daily custody and care currently being provided by Stepmother." *Id.* We disagree with Stepmother's characterization of Mother's testimony.

{¶ 13} Mother testified that she had a bedroom available for J.A.M. and that she could provide for herself and both of her children. Transcript of January 26, 2022 Hearing, p. 46, 83. She had a steady job as a Pharmacy Technician at Rite Aid. *Id.* at 79-80. Further, Mother testified about activities that she and her two children enjoyed doing together, how she wanted her two children to bond again in the future, and the positive relationship J.A.M. had had with Mother's relatives. *Id.* at 63, 65-69, 73-79.

Mother also explained that she had never been investigated by children's services, did not have any criminal convictions, and did not have any physical or mental health concerns. *Id.* at 83-84, 100-101. Finally, Mother explained that if the adoption petition were denied, she would seek permission from the juvenile court to reach out to J.A.M. and seek visitation so that he could visit with her and his sister. She stated that she would take the steps in increments as small as necessary to not upset J.A.M.'s life balance. *Id.* at 63-64.

{¶ 14} In short, Mother provided material evidence, in the form of testimony, related to the best interest factors that the probate court had to analyze under R.C. 3107.161(B). Stepmother's assertion that Mother did not provide material evidence of what was in the best interest of J.A.M. is simply incorrect. Stepmother may disagree with the conclusions the probate court drew based on the material evidence offered by Mother, but on this record we cannot say that Mother failed to meet her burden under R.C. 3107.161(C) of providing material evidence regarding J.A.M.'s best interest.

{¶ 15} Next, Mother was required to establish that J.A.M.'s current placement was "not the least detrimental available alternative." According to R.C. 3107.161(A), " 'the least detrimental available alternative' means the alternative that would have the least long-term negative impact on the child." Stepmother contends that the probate court misapplied the plain language of R.C. 3107.161(C) by finding that this least detrimental available alternative component was not relevant because placement was not an issue in this case. The probate court explained that typically the noncustodial parent is the person contesting the adoption. As such, "[i]t would not make logical sense that a

contesting parent in a stepparent adoption must establish anything on the issue of current placement in circumstances where he or she is not disputing the child's placement in the adoption case." February 7, 2022 Decision, p. 7. The court continued:

Therefore, the Court interprets R.C. § 3107.161(C) as meaning that the contesting person must establish that the child's current placement is not the least detrimental available alternative only if placement is a disputed issue in that adoption proceeding. Otherwise, placement is not a relevant issue impacting the child's best interest or adoption. In this case, the child's current custody arrangements are not disputed and will not change regardless of how the Court decides the adoption case. That issue is not relevant in this case.

*Id.* at 7-8.

**{¶ 16}** In short, the probate court did not make an explicit finding addressing the least detrimental available alternative component of R.C. 3107.161(C). However, the probate court stated a number of times in its decision that it believed the current placement in which Mother was not a part of J.A.M.'s life was not in J.A.M.'s best interest. Rather, the least detrimental available alternative was to deny the adoption petition and keep J.A.M. in his stable environment with Father and Stepmother, while allowing Mother and J.A.M. to renew their relationship that had existed for the first eleven years of J.A.M.'s life. *See In re Adoption of M.R.P.,* 12th Dist. Warren No. CA2022-01-001, 2022-Ohio-1631, at ¶ 26, 44 (stating that the "third option" of denying the petition and allowing the child the opportunity to develop and maintain a relationship with the father was the least

detrimental available alternative).

{¶ 17} Further, as explained below, the probate court did address a similar factor when considering the best interest of J.A.M. pursuant to R.C. 3107.161(B). The first factor listed in R.C. 3107.161(B)(1) is "[t]he least detrimental available alternative for safeguarding the child's growth and development." The court reviewed the evidence presented at the hearing and found that this factor did not favor the adoption. Much of the same evidence the probate court discussed in relation to R.C. 3107.161(B)(1) would apply to the least detrimental available alternative component of R.C. 3107.161(C).

{¶ 18} The testimony demonstrated that Stepmother and Father provided a safe, supportive, and positive environment for J.A.M. But Mother also established that granting Stepmother's adoption petition was not the least detrimental available alternative, because doing so would terminate J.A.M.'s opportunity to resume a similar safe, supportive, and positive environment with Mother and would also cut off J.A.M. from his maternal relatives with whom he had had a good relationship in the past. By showing that there was a better alternative available for J.A.M. than his current arrangement, Mother, by definition, established that J.A.M.'s current placement was "not the least detrimental available alternative." R.C. 3107.161(C).

{¶ 19} Finally, Stepmother contends that the trial court abused its discretion in finding that Stepmother's adoption was not in the best interest of J.A.M. R.C. 3107.161(B) contains a non-exhaustive list of factors to consider when making a determination in a contested adoption concerning the best interest of a child. We will address each of the elements set forth in R.C. 3107.161(B)(1)-(11).

*(B)(1) The least detrimental available alternative for safeguarding the child's growth and development*

**{¶ 20}** The probate court explained that J.A.M. "is in a safe, stable environment, attends good schools, and has opportunities to participate in a variety of activities." February 7, 2022 Decision, p. 8. But J.A.M. and Mother also had a "good, loving relationship with each other for the first eleven years (85%) of his life." *Id.* Based on the testimony presented at the hearing, the probate court found that "the proposed adoption will not safeguard or improve J.A.M.'s growth and development. To the contrary, the Court believes that it would have a negative impact on J.A.M.'s growth and development to permanently severe [sic] his relationship with his mother * * *." *Id.* at 9.

*(B)(2) The age and health of the child at the time the best interest determination is made and, if applicable, at the time the child was removed from the home*

**{¶ 21}** The probate court noted that J.A.M. was a 13-year-old boy at the time of the hearing and was a "healthy, happy, well-adjusted, and well-rounded child." *Id.* The court found that this was a neutral factor, because there was no evidence that this would change no matter what the court decided regarding adoption.

*(B)(3) The wishes of the child in any case in which the child's age and maturity makes this feasible*

**{¶ 22}** The probate court conducted an in camera interview with J.A.M. According to the court, J.A.M. loves Father, Stepmother, Mother, and his sister and "expressed a preference to have an ongoing relationship with all of them now, if possible, rather than

waiting until he is an adult." *Id.* at 10. Therefore, the court found that R.C. 3107.161(B)(3) did not favor granting the adoption.

*(B)(4) The duration of the separation of the child from a parent*

**{¶ 23}** The probate court noted that the contact and communication between J.A.M. and Mother came to an abrupt halt upon issuance of the Juvenile Court Order in March 2020. As a result, the relationship between Mother and J.A.M. had been put on hold for 2 years. The court concluded that "[t]he relatively short duration of relationship breakdown between J.A.M. and his mother, and the circumstances giving rise to that breakdown, weighs against granting the adoption." February 7, 2022 Decision, p. 10.

*(B)(5) Whether the child will be able to enter into a more stable and permanent family relationship, taking into account the conditions of the child's current placement, the likelihood of future placements, and the results of prior placements*

**{¶ 24}** The probate court found that J.A.M.'s relationship with Father and Stepmother will not change regardless of whether the adoption is granted. Further, the court noted that there was no evidence that a renewal of the relationship between Mother and J.A.M. would "destabilize the relationship J.A.M. currently has with his father and stepmother." *Id.* at 11. Therefore, the court found that R.C. 3107.161(B)(5) did not favor granting the adoption.

*(B)(6) The likelihood of safe reunification with a parent within a reasonable period of time*

**{¶ 25}** The court found that both J.A.M. and Mother wanted their relationship and

potential for communication and contact restored.   According to the probate court, this "could happen quickly and seamlessly without any negative impact on J.A.M.   There is no evidence that mother is unfit, or that the relationship she had with her son before the 2020 Juvenile Court Order was unsafe for him."   February 7, 2022 Decision, p. 11. Therefore, the court found that R.C. 3107.161(B)(5) did not favor granting the adoption.

*(B)(7) The importance of providing permanency, stability, and continuity of relationships for the child*

**{¶ 26}** The probate court noted that J.A.M.'s permanent and stable relationship with Father and Stepmother and their extended family would not change regardless of the outcome of the adoption petition.   But granting the adoption would sever his relationship with Mother and her extended family, at least during J.A.M.'s teenage years. Consequently, the court found that this factor did not favor granting the adoption. February 7, 2022 Decision, p. 11.

*(B)(8) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest*

**{¶ 27}** Once again, the court noted that J.A.M.'s relationship with Father and Stepmother would not change regardless of the outcome of the adoption petition.   But the court found that foreclosing an opportunity to resume what was a good relationship with his Mother and sister would not be in J.A.M.'s best interest.   *Id.* at 11-12.   Therefore, R.C. 3107.161(B)(8) did not favor granting the adoption.

*(B)(9) The child's adjustment to the child's current home, school, and community*

{¶ 28} The court found that this was a neutral factor because J.A.M. was well-adjusted to his home, school, and community and this fact would not change regardless of the outcome of the adoption petition.   February 7, 2022 Decision, p. 12.

*(B)(10) The mental and physical health of all persons involved in the situation*

{¶ 29} The court found that this factor was not an issue in this case, because "[t]here was no evidence presented regarding any ongoing mental or physical health concerns of mother, father, or stepmother."   *Id.* at 12.

*(B)(11) Whether any person involved in the situation has been convicted of, pleaded guilty to, or accused of any criminal offense involving any act that resulted in a child being abused or neglected*

{¶ 30} The court found that R.C. 3107.161(B)(11) was not an issue in this case, because "[t]here was no evidence presented regarding criminal misconduct of mother, father, or stepmother."   *Id.* at 12.

*Other factors*

{¶ 31} R.C. 3107.161(B) provides a non-exhaustive list of factors for a probate court to consider when determining the best interest of a child who is the subject of an adoption proceeding.   The court may consider other factors relevant to the best interest of the child.   *In re Adoption of M.R.P.*, 12th Dist. Warren No. CA2022-01-001, 2022-Ohio-1631, at ¶ 46.   The probate court addressed Stepmother's concerns that Mother was experiencing financial difficulties.   The court concluded that "mother's financial struggles are not a relevant factor in this adoption case.   Mother is not seeking to gain custody of

J.A.M. or to change his placement. She just wants an opportunity to visit and communicate with him. That is not dependent on her financial abilities." *Id.* at 12-13.

{¶ 32} Stepmother also contends that the probate court failed to consider or weigh "the crucial possibility" that Father could "unexpectedly pass away, which would leave Mother with sole custody of J.A.M. and Stepmother with no recourse or further involvement in J.A.M.'s life." Stepmother's Reply Brief, p. 9. She cites *In re Adoption of B.L.F.*, 4th Dist. Athens No. 20CA11, 2021-Ohio-1926, for the proposition that this possibility is of great concern and should have been considered by the probate court. But the facts in *B.L.F.* were very different from the facts before us. In *B.L.F.*, the father had consented to the adoption of his child by stepfather. The father testified that the adoption was in the best interest of the child, and he did not appear to show any interest in continuing a relationship with his child. *Id.* at ¶ 9. Consequently, the trial court expressed concern that father could regain custody of the child in the event of mother's death. *Id.* at ¶ 54. Here, Mother had had a recent, positive relationship with J.A.M. and wanted to renew that relationship. The probate court found Mother's testimony credible and did not have any concerns with Mother's maintaining a relationship with J.A.M. during his teenage years.

{¶ 33} It is clear that the probate court took its duties seriously and considered each of the best interest factors in R.C. 3107.161(B). The court's analysis of each factor was supported by the evidence of record. Based on our review of the evidence and the statutory best interest factors, we conclude that the probate court did not abuse its discretion when it found that Stepmother had failed to satisfy her burden of proving that

the adoption was in J.A.M.'s best interest. Accordingly, Stepmother's assignments of error are overruled.

III.     Conclusion

**{¶ 34}** Having overruled both of Stepmother's assignments of error, the judgment of the probate court is affirmed.

. . . . . . . . . . . .

TUCKER, P.J. and EPLEY, J., concur.

Copies sent to:

Matthew C. Sorg
Kelly M. Schroeder
G.B.M.
Hon. Thomas M. O'Diam