[Cite as *In re P.M.K.*, 2024-Ohio-1770.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

IN THE MATTER OF THE PETITION

FOR ADOPTION OF: P.M.K., A MINOR,

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 24 MA 0019**

---

Probate - Adoption Appeal from the
Court of Common Pleas, Probate Division
of Mahoning County, Ohio
Case No. 2022 AD 0030

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, Mark A. Hanni, Judges

---

**JUDGMENT:**
Affirmed.

---

*Atty. Jeffrey Jakmides, Atty. Julie A. Jakmides* for Appellants and

*Atty. Brian J. Macala*, for Appellee.

Dated: May 2, 2024

**Robb, P.J.**

{¶1}   Appellants (the grandparents) appeal the decision of the Mahoning County Common Pleas Court, Probate Division denying their petition to adopt their grandchild. Although the court found the mother's consent to adoption was not required due to a lack of maintenance and support, the court subsequently concluded the requested adoption was not in the child's best interest.  Pointing to R.C. 3107.161(C), the grandparents argue the mother failed to produce "material evidence needed to determine what is in the best interest of the child" and failed to "establish that the child's current placement is not the least detrimental available alternative to the child's placement."  They also contend the ruling on the child's best interest was contrary to the manifest weight of the evidence.  For the foregoing reason, the probate court's decision is affirmed.

STATEMENT OF THE CASE

{¶2}   In March 2019, the child was removed from the mother's house.  The maternal grandmother received temporary custody.  On January 29, 2020, the juvenile court granted the grandmother's motion for full custody.  (11/9/23 Tr. Ex. A).  The mother was granted supervised visitation.  When the mother filed a motion to modify her rights, the grandmother agreed to expand the mother's supervised visitation time to four hours per week.  Supervision was to be conducted by the grandmother or the child's father figure (the man the mother was dating when the child was born).  On May 20, 2021, the juvenile court adopted the agreement, finding it was in the child's best interest.  (11/9/23 Tr. Ex. B).

{¶3}   On July 7, 2022, the maternal grandparents filed an adoption petition in the probate court.  A hearing was held on whether parental consent to adoption was required or whether one of the two options for bypassing consent applied.  The mother argued she regularly communicated with the child and was never ordered or asked to provide support. The biological father did not appear in the action.  The grandparents argued the option involving a failure to support applied to both parents while acknowledging the option involving a failure to communicate did not apply to the mother.

{¶4}   The probate court found each parent failed without justifiable cause to provide maintenance or support in the year preceding the petition.  During that period,

there was also a failure to communicate by the father. (7/27/23 J.E.). Based on these findings, the probate court concluded parental consent to adoption was not required and scheduled a hearing on the child's best interest.

{¶5} At the November 9, 2023 best interest hearing, the grandparents testified the child was well adjusted to her home, school, and community. (Tr. 5-10, 36). The grandmother said the child had been living with them for over four years. (Tr. 60). She deposited checks from the state for the child in an account with a $5,000 balance; she said this money was used if the child asked for something, such as when the child went to a summer study program. (Tr. 13-14). She emphasized the child's excellent attendance and grades. (Tr. 6).

{¶6} The grandmother said the child had a good relationship with all of her family members. (Tr. 11-12). She noted the man the child calls "dad" lived in Canton, Ohio (with multiple children). The child's maternal half-brother lived in another town with his father (and multiple siblings) but visited with the subject child at the grandparent's house. (Tr. 11). Although opining the mother-child relationship was "very minimal," the grandmother acknowledged the child displays affection for her mother with hugs, kisses, and expressions of love. (Tr. 27). The grandmother acknowledged telling the juvenile court that expanding the mother's visitation time would be in the child's best interest in 2021. (Tr. 21). She complained the mother's last visit was two months before the best interest hearing. (Tr. 12). She believed the mother only attended one sporting event and complained the mother did not attend a "Grandparent's Day" event after she was invited. (Tr. 13). The grandmother estimated the mother exercised only 20% of her allocated visitation time. (Tr. 34).

{¶7} The grandfather said they could financially afford to raise the child. (Tr. 39). He indicated the child's younger brother regularly visited their home. (Tr. 38). He opined the child's visits with the mother should be terminated because the missed visits were hurtful and disappointing for the child. (Tr. 42-45).

{¶8} Testimony was also provided by the court's adoption assessor. She opined the adoption appeared to be in the child's best interest. (Tr. 48). Nearly a year had passed since she met with the grandparents and the child at their house. (Tr. 47, 52). When asked why she did not contact the mother, she made the following statements: she

usually does not contact parents for grandparent adoptions; the grandparents told her they had no address for the mother; and she did not ask if they had a phone number for the mother. (Tr. 49-50).

{¶9} The adoption assessor said the child spoke of her "mom" in a neutral manner and did not seem upset. (Tr. 56-57). This witness said the child appeared "happy" about the adoption but also revealed the child "doesn't think it's really going to change anything; everything is going to stay the same." (Tr. 51-52). The child additionally informed the adoption assessor that she wished to keep the last name of the man she considered her father rather than change her surname to that of her grandparents. The child loved this man very much and was close to his children. The adoption assessor also confirmed the child was very attached to her maternal half-brother. (Tr. 55).

{¶10} The mother testified she had been living in Canton, Ohio in the year preceding the hearing. (Tr. 59). During that time, she gave birth to a baby girl (prematurely); she brought the baby to some visits with the child. (Tr. 60, 67). She explained the inability to maintain regular visitation with the subject child in the weeks before the hearing was due to her car being impounded after loose lug nuts caused the loss of a wheel. (Tr. 79). She indicated the grandmother would not assist with transportation for visits. The mother pointed out she had standard visitation with her son and maintained those visits due to people transporting the child for her. (Tr. 63). The mother also said the lack of transportation resulted in her missing the one parent-teacher conference of which she was notified. (Tr. 71-72). She pointed out she is not invited to medical appointments. (Tr. 75). She testified she attended three sporting events. (Tr. 77). The mother estimated she had been attending 75% of the offered visits. (Tr. 67, 73-74).

{¶11} The mother had been adopted by the grandmother's husband, and she said she regretted this fact. (Tr. 74). The mother made reference to her own biological father, his wife, and their family members. The mother indicated a "family feud" between them and the grandparent-petitioners, noting the child had no contact with this side of the family. (Tr. 64). The mother said the child showed her love and affection. She opined the termination of her maternal relationship would not be in the child's best interest. (Tr. 66, 68-70). The court conducted an in camera interview with the child.

Case No. 24 MA 0019

{¶12} In denying the adoption petition, the probate court recognized the grandmother obtained custody because the mother was placing the child in dangerous situations and not properly caring for her. The court emphasized the child was doing very well with the grandmother, who provided love, support, and stability. It was pointed out, a year before the adoption petition was filed, the grandmother agreed and the juvenile court found it was in the child's best interest to grant the mother expanded visitation time. It was noted the child was almost 12 years old and spent time with her mother whom she called "mom." After stating all factors in R.C. 3107.161 were considered, the probate court concluded it would not be in the child's best interest or the least detrimental available alternative to permanently sever the child's parental relationship with her mother. (1/8/24 J.E.)

{¶13} The grandparents appealed the denial of their adoption petition. Their brief sets forth two assignments of error related to the best interest stage of their adoption case.[1]

## CONTESTED ADOPTION

{¶14} The probate court may grant an adoption request filed by an eligible petitioner if after a hearing, "the court finds that the required consents have been obtained or excused and that the adoption is in the best interest of the person sought to be adopted as supported by the evidence * * *." R.C. 3107.14(C). A parent's consent to a child's adoption is not required after the court holds a hearing and finds by clear and convincing evidence "that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner." R.C. 3107.07(A).

{¶15} When subsequently determining the child's best interest, the court shall consider all relevant factors including, but not limited to the following:

(1) The least detrimental available alternative for safeguarding the child's growth and development;

---

[1] We note the probate court's initial decision bypassing parental consent has not been challenged by the mother and is therefore not before this court.

Case No. 24 MA 0019

(2) The age and health of the child at the time the best interest determination is made and, if applicable, at the time the child was removed from the home;

(3) The wishes of the child in any case in which the child's age and maturity makes this feasible;

(4) The duration of the separation of the child from a parent;

(5) Whether the child will be able to enter into a more stable and permanent family relationship, taking into account the conditions of the child's current placement, the likelihood of future placements, and the results of prior placements;

(6) The likelihood of safe reunification with a parent within a reasonable period of time;

(7) The importance of providing permanency, stability, and continuity of relationships for the child;

(8) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(9) The child's adjustment to the child's current home, school, and community;

(10) The mental and physical health of all persons involved in the situation;

(11) Whether any person involved in the situation has been convicted [of certain offenses or is perpetrator of act in abuse or neglect adjudication, a factor which is agreed to be inapplicable here].

R.C. 3107.161(B).

{¶16} "A person who contests an adoption has the burden of providing the court material evidence needed to determine what is in the best interest of the child and must establish that the child's current placement is not the least detrimental available alternative." R.C. 3107.161(C). The term "least detrimental available alternative" is used in both (B)(1) and (C) and is statutorily defined as "the alternative that would have the least long-term negative impact on the child." R.C. 3107.161(A).

{¶17} Adoption involves a permanent termination of the fundamental right of a parent to have a relationship with their child. *In re Adoption of Masa*, 23 Ohio St.3d 163,

Case No. 24 MA 0019

165, 492 N.E.2d 140 (1986). Conversely, it has been observed, "the right [to adopt] is permissive and not absolute" (emphasizing the adoption statutes use of the discretionary word "may"). *In re Adoption of Charles B.*, 50 Ohio St.3d 88, 94, 552 N.E.2d 884 (1990), citing R.C. 3107.02, R.C. 3107.03, and R.C. 3107.14(C).

**{¶18}** "Since the facts in each case will vary, and the advisability of permitting an adoption must be made on a case-by-case basis, the trial court must be allowed broad discretion in making the determination." *In re Adoption of Charles B.*, 50 Ohio St.3d 88, 94, 552 N.E.2d 884 (1990). An abuse of discretion is more than an error of judgment and involves a decision that is unreasonable, arbitrary, or unconscionable. *Id.* In cases involving the termination of parental rights, a court may be required to review for sufficiency of the evidence and/or weight of the evidence depending on the parties' argument and the issue before the court. *See generally In re Z.C.*, __ Ohio St.3d __, 2023-Ohio-4703, __ N.E.3d __, ¶ 18 (where the appellant alleged an "abuse of discretion" in finding clear and convincing evidence, and the Court opined that was not the correct standard of review).

ASSIGNMENT OF ERROR ONE

**{¶19}** The grandparents' first assignment of error contends:

"The trial court failed to address the fact Mother presented no material evidence needed to determine what is in this child's best interest and did not meet her burden of proof as required by O.R.C. 3107.161 Determining Best Interest of Child in Contested Adoption – Burden of Proof."

**{¶20}** In the case relied upon by the grandparents, the Second District explained R.C. 3107.161(C) placed two burdens on the parent contesting the adoption: (1) the burden of providing material evidence as to the ultimate question of the child's best interest and (2) the burden to establish that the child's current placement was not the least detrimental available alternative. *In the Matter of Adoption of J.A.M.*, 2d Dist. Greene No. 2022-CA-14, 2022-Ohio-2313, ¶ 11 (finding the mother's testimony included evidence related to the best interest factors). However, the Second District then pointed out, "[The petitioner], as the person seeking adoption, ultimately had the burden of proving that adoption was in the best interest of [the child]." *Id.*, citing *In re Adoption of M.R.P.*, 2022-Ohio-1631, 189 N.E.3d 841, ¶ 19 (12th Dist.), (citing decisions from other districts).

**{¶21}** Similarly, in a case attached to the grandparents' brief but not addressed within the brief, the Eighth District made the following observation: "Ohio courts agree that a person petitioning the court for an adoption retains the ultimate burden of proving that the adoption is in the child's best interest under R.C. 3107.161(B)." *In re Adoption of J.G.S.*, 1st Dist. Hamilton No. C-220534, 2023-Ohio-1155, ¶ 14. Our court has likewise emphasized, "the petitioner retains the burden of proving adoption is in the best interest of the child." *In the Matter of Adoption of M.R.M.*, 7th Dist. Mahoning No. 17 MA 0088, 2017-Ohio-7710, ¶ 50.

**{¶22}** Initially, the grandparents address the first obligation set forth in division (C) of R.C. 3107.161. They claim the mother failed to meet her "burden of providing the court material evidence needed to determine what is in the best interest of the child" as required by R.C. 3107.161(C). The statute's use of the term "providing" indicates the burden is one of production, rather than a burden of proof. *See, e.g., id.* at ¶ 50-52. Material evidence means "[e]vidence having some logical connection with the facts of the case or the legal issues presented." *In re Adoption of M.R.P.*, 189 N.E.3d 841 at ¶ 23, quoting *Black's Law Dictionary* (11th Ed.2019).

**{¶23}** Through her testimony, the mother met her burden of producing material evidence related to the best interest factors. *See generally In the Matter of Adoption of M.R.M.*, 7th Dist. No. 17 MA 0088 at ¶ 52 ("Birth Dad testified about his sporadic visitation with the child and why he chose not to enforce visitation through court orders at times. The probate court believed his testimony. His testimony can be considered material evidence as to the best interest of the child. Thus, he did produce evidence."). On this point, we incorporate our review of the testimony in our Statement of the Case above. Additionally, we point out when the mother was asked about the child's best interest as related to a continuing maternal relationship, she made the following observations: "I am her best friend. That's my daughter. She tells me everything. She talks to me about everything. She has no filter when it comes to conversations with me." (Tr. 68).

**{¶24}** Contrary to an opinion the child expressed to the adoption assessor (a year earlier) about everything staying the same after the adoption, the mother pointed out the child would never be able to see or speak to her again if her parental rights were terminated by the adoption; she opined this would be traumatic for the child. (Tr. 69-70).

The mother opined the adoption would not be in the child's best interest, emphasizing the child loves her and they have a parent-child bond. (Tr. 68-70).

{¶25} We also note, prior to the mother's testimony, other witnesses had already testified to various pertinent considerations. The mother's counsel examined the petitioners and the adoption assessor on important points. Regardless of which party called a witness to the stand, evidence is provided to a court when a person contesting an adoption points to testimony in the record pertinent to the best interest factors, such as that already provided by the petitioners at the beginning of the hearing.

{¶26} Next, the grandparents claim the mother failed to "establish that the child's current placement is not the least detrimental available alternative" under the second portion of R.C. 3107.161(C). In the case cited by the grandparents, a probate court opined this specific provision was inapplicable to the situation because it would make no sense for a non-custodial parent, who was contesting the adoption *but not the custody arrangement,* to argue the current placement (the custody arrangement) was *not* the least detrimental available alternative. *In re J.A.M.*, 2d Dist. No. 2022-CA-14 at ¶ 15. The Second District, however, indicated the second requirement in R.C. 3107.161(C) did in fact apply to a non-custodial parent contesting the adoption but not contesting the "current" arrangement. Nevertheless, the appellate court found the probate court's comments did not constitute reversible error while pointing out the probate court weighed the best interest factors, including the factor set forth in (B)(1) ("[t]he least detrimental available alternative for safeguarding the child's growth and development"). *Id.* at ¶ 16-17.

{¶27} The appellate court then found the mother established "that granting Stepmother's adoption petition was not the least detrimental available alternative, because doing so would terminate [the child's] opportunity to resume" a relationship with the mother and her relatives. *Id.* at ¶ 18, citing *In re M.R.P.*, 189 N.E.3d 841 at ¶ 26, 44 (agreeing the option of denying the petition and allowing the child the opportunity to develop and maintain a relationship with the father could rationally be viewed as the least detrimental available alternative). *See also J.G.S.*, 1st Dist. Hamilton No. C-220534 at ¶ 22 ("Father failed to provide evidence that the adoption was not the least-detrimental alternative. In contrast, the magistrate found that [the petitioner] provided material

evidence demonstrating how adoption was the least-detrimental alternative available."). Therefore, a party can establish a "current placement is not the least detrimental available alternative" when there exists evidence a less detrimental available option would be the current placement plus a better relationship with or increased visitation by the non-custodial parent.

**{¶28}** The provision in division (C) indicating the challenger must establish the "least detrimental available alternative" relates to the preceding division's "least detrimental available alternative for safeguarding the child's growth and development" best interest factor. *See* R.C. 3107.161(B)(1). As set forth above, the first division in the statute defines least detrimental available alternative as "the alternative that would have the least long-term negative impact on the child." R.C. 3107.161(A). This definition applies to the phrase as used in both division (B)(1) and (C). Notably, after the consent bypass stage, the ultimate decision for the probate court is the child's best interest. *See* R.C. 3107.14(C). In making this final decision, every pertinent best interest factor must be weighed, non-listed factors can be relevant, and no one factor is dispositive. R.C. 3107.161(B) ("including, but not limited to"). *See also J.G.S.*, 1st Dist. No. C-220534 at ¶ 15.

**{¶29}** Here, the trial court found the requested adoption would not be the least detrimental available alternative due in part to the established mother-child relationship. As in the Second District's case relied on by the grandparents, the court had sufficient evidence to establish an adoption was "not the least detrimental available alternative" and "the current placement was not the least detrimental available alternative." *In re J.A.M.*, 2d Dist. No. 2022-CA-14 at ¶ 18. *See also In re M.R.P.*, 189 N.E.3d 841 at ¶ 26, 44. The mother testified, pointed to the testimony of other witnesses, and could rely on reasonable inferences, all of which permits a rational fact-finder to conclude "the least long-term negative impact on the child" would be served by the alternative of denying the adoption and by allowing the mother to resume the visitation allocated to her by the juvenile court in a more regular manner.

**{¶30}** The evidence established there existed a bond between the mother and the nearly twelve-year-old child. The adoption assessor acknowledged the child's support for the adoption (during a meeting a year before the hearing) was based on her belief that

her life would stay the same after the adoption. The mother and child had contact through visitation granted by court order. Among other facts addressed further in the next assignment of error, the mother showed the court-ordered supervised visitation between the mother and the subject child was expanded by the juvenile court (under an agreement by the parties) a year before the adoption petition was filed. In her testimony, the mother mentioned a desire to seek less restricted visitation from the juvenile court. Testimony also indicated the mother had standard unsupervised visitation with a different child and was able to exercise that visitation when transportation assistance was provided by relatives. In sum, the mother's testimony and other evidence sufficiently indicated the long-term impact on the subject child's life would be positively served by the alternative of resuming more regular maternal visitation (which had been hindered by various occurrences). *See In the Matter of Adoption of M.R.M.*, 7th Dist. No. 17 MA 0088 at ¶ 54 (finding the father established a less detrimental alternative to the child's placement where he testified it would be in the child's best interest to maintain the legal status quo, whereby the child would continue to live with the mother and the stepfather and the father would increase his visitation time as allowed by an existing custody order).

**{¶31}** Lastly, as emphasized above, "[t]he least detrimental available alternative for safeguarding the child's growth and development" is merely one, non-dispositive factor in determining the ultimate question of the child's best interest as related to an adoption petition. R.C. 3107.161(B)(1) ("including, but not limited to"). *See also J.G.S.*, 1st Dist. No. C-220534 at ¶ 15. This leads to the next assignment of error where the grandparents contest the probate court's weighing of the evidence on the alternatives and on the other best interest factors. Before doing so, we point out sufficiency of the evidence and weight of the evidence are distinct determinations; sufficiency is a test of legal adequacy while weight depends on the effect of the evidence in inducing belief by the trier of fact. *In re Z.C.*, __ Ohio St.3d __, 2023-Ohio-4703 at ¶ 13 (a case challenging whether there was clear and convincing evidence to terminate parental rights).

ASSIGNMENT OF ERROR TWO

**{¶32}** The grandparents' second assignment of error provides:

"The trial court's decision denying grandparents' adoption petition is against the manifest weight of the evidence and is contrary to the mandate of O.R.C. 3107.161 Determining Best Interest of Child in Contested Adoption – Burden of Proof."

{¶33} The grandparents argue the court erred and abused its discretion in weighing the best interest factors in division (B) of R.C. 3107.161. In addition to arguing the mother failed to sufficiently establish the placement was "not the least detrimental available alternative" under division (C) of R.C. 3107.161, the grandparents suggest the manifest weight of the evidence showed the requested placement was the least detrimental alternative. They say the mother provided only "flimsy excuses" for her failure to exercise all of the time granted to her by the juvenile court's visitation order.

{¶34} The grandparents also complain the probate court did not refer to each factor when setting forth its factual observations and opinions in the judgment. They similarly suggest the court should have specifically referred to the mother's satisfaction of the requirements in R.C. 3107.161(C), which they discussed under their prior assignment. However, the judgment clearly specified the court applied R.C. 3107.161. The court also set forth the statutory definition of "the least detrimental available alternative." In addition, the court expressly said it reviewed the statutory best interest factors, and the judgment contained various factual findings, which touched upon information relevant to best interest factors before concluding the child's ultimate best interest was served by denying the grandparents' adoption petition.

{¶35} The probate court was not required to list each statutory factor or cite each statutory subdivision in its judgment entry denying adoption. *In the Matter of Adoption of M.R.M.*, 7th Dist. No. 17 MA 0088 at ¶ 15. "[W]hen a probate court states it considered the applicable statutory factors and the record contains evidence of some of the factors that is sufficient to demonstrate consideration of R.C. 3107.161(B)." *Id.* at ¶ 18. We also note, even when there is no such statement, a court is presumed to have considered the best interest factors if "it can be gleaned from the record that the probate court did consider the R.C. 3107.161(B) factors." *Id.* at ¶ 21. Contrary to any suggestion in Appellants' brief, the probate court's entry is not procedurally deficient.

{¶36} We proceed to review the evidence related to the factors and the trial court's findings. The probate court pointed out the child would soon be 12 years old. *See* R.C.

3107.161(B)(2) (child's age). The testimony showed she began living with the grandparents when she was 7 years old. *See id.* (age at removal). The probate court emphasized the love, support, and stability the grandparents have provided. *See* R.C. 3107.161(B)(8) (child's relationships). The custodian-child relationship seemed very strong, and the grandparents fostered various relationships with certain people who were significant to the child (if those people met their approval). In a filed declaration, the grandparents agreed to allow the child to keep the last name of the man she considered her father, as requested by the child.

{¶37} The child had no health issues; however, the adoption assessor indicated the child was previously treated for emotional distress due to being separated from her half-brother (the child the mother sees under standard visitation terms). *See* R.C. 3107.161(B)(2) (child's health), (8) (child's relationships). The mother wished to facilitate the child's relationship with her new baby and with the mother's biological father and his family. The mother's testimony indicated the grandparents had issues with the latter wish, and the grandmother's testimony suggested a belief the child would not benefit from establishing a relationship with her baby sister.

{¶38} The grandparents were both employed, and each had a physical health issue that was well controlled. The grandfather testified he was 48 years old. The affidavits showed the grandmother was 51 and the mother was 31 at the time of the hearing. The mother's emotional history was not addressed during the probate court hearing but was outlined in the juvenile court's judgment, which was an admitted exhibit. *See* R.C. 3107.161(B)(10) (mental and physical health of involved parties).

{¶39} The mother testified about the child's relationship with her and the loving bond they shared, opining the child's best interest would be served by a continuing relationship and further visitation with the mother. The grandmother acknowledged the child's expression of love and affection for her mother. As noted in the probate court's judgment, the court interviewed the child in camera. A year earlier, the court's adoption assessor spoke to the child and found her very intelligent and talkative. At that time, the child voiced happiness about the adoption but was under *the mistaken impression* that "everything is going to stay the same." (Tr. 51-52). The grandfather disclosed a desire to "cut visits off" (as permitted by the requested adoption, which necessarily terminates

parental rights). *See* R.C. 3107.161(B)(3) (child's wishes), (7) (importance of relationship continuity), (8) (relationship with parent).

{¶40} The child had been out of her mother's custody for more than four years. *See* R.C. 3107.161(B)(3) (duration of the child's separation from a parent). There was no indication a request for custody was contemplated by the mother, but the mother indicated a desire for less restrictive visitation terms (explaining she had not filed a request because the grandparents' adoption petition had been pending since July 2022). *See* R.C. 3107.161(B)(6) (likelihood of safe reunification in a reasonable period). The mother was provided supervised visitation in the January 2020 juvenile court order granting custody to the grandmother. We note the pandemic began soon after this order, and there was some indication in the testimony that visitation was affected by closed seating areas in restaurants (as the grandmother mentioned meeting inside a restaurant after it reopened).

{¶41} At the 2023 adoption hearing, the grandmother voiced a general concern about the issues experienced in 2019 that resulted in her originally obtaining custody, without showing or even expressly claiming the dispositive problems remained. The probate court acknowledged the grandmother's concern about the child's life with the mother in 2019, when she was unsupervised and in potentially dangerous situations. As the probate court pointed out, the mother's visitation was expanded by the juvenile court in 2021, a year before the grandparents filed the adoption petition in probate court; at that time, the grandmother told the juvenile court that expanded maternal relationship was in the child's best interest.

{¶42} There was conflicting testimony on how often the mother exercised the visitation time allocated by the juvenile court. Testimony indicated the mother gave birth to a premature baby approximately ten months before the hearing. More recently, the mother's car was impounded after a wheel failure, which was a detriment to her visitation since she was fully responsible for transportation for her visits with the child at issue (but had transportation assistance for her standard visitation with her son). We note the adoption consent bypass here did not involve the lack of contact option but involved lack of maintenance and support where there was no child support order or informal request for support (where the custodian testified to receiving checks from the state for the child).

Case No. 24 MA 0019

**{¶43}** The child did well in school and had many friends. The court emphasized the child was well adjusted to the grandparents' home and to her activities. *See* R.C. 3107.161(B)(9) (adjustment to home, school, and community). As the court observed, the child had a stable life in the grandparents' home (with or without the requested adoption). Although the mother caused disappointment when missing visits, the child was bonded with the mother. *See* R.C. 3107.161(B)(5) (ability to enter more stable and permanent family relationship), (7) (importance of providing permanency, stability, and continuity of relationships). The probate court spoke of the child's developing interest in her situation and in her mother, whom she called "mom." *See* R.C. 3107.161(B)(1) (the least detrimental available alternative for safeguarding the child's growth and development).

**{¶44}** When reviewing for manifest weight of the evidence, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *In re Z.C.*, __ Ohio St.3d __, 2023-Ohio-4703 at ¶ 14. In reviewing a weight of the evidence argument, the appellate court makes presumptions in favor of the fact-finder's decision. *Id.*

**{¶45}** The probate court heard the testimony as it was presented and occupied the best position from which to weigh the evidence and assess witness credibility by considering demeanor, voice inflection, gestures, and other indicia of honesty or sincerity. *See id., citing Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3 ("If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."). *See also Bechtol v. Bechtol*, 49 Ohio St.3d 21, 23, 550 N.E.2d 178 (1990) (it is for the trial court to resolve disputes of fact and weigh the testimony and the credibility of witnesses), citing *Trickey v. Trickey*, 158 Ohio St. 9, 13, 106 N.E.2d 772 (1952) (deferring to the trial court's personal observations in proceedings involving child welfare and custody on items that may not clearly stand out in the printed record transmitted to the reviewing court). After

reviewing all evidence, we cannot conclude the probate court lost its way and created a manifest miscarriage of justice. This assignment of error is without merit.

{¶46} In sum, the probate court did not abuse its discretion; it was not unreasonable, arbitrary, or unconscionable to find the denial of the adoption petition would have "the least long-term negative impact on the child." *See* R.C. 3107.161(A). In addition, the court did not commit legal error; the court was presented with sufficient evidence upon which to make its decision. Furthermore, the judgment denying the adoption petition after weighing of the best interest factors was not contrary to the manifest weight of the evidence. For the foregoing reasons, the probate court's decision is affirmed.

Waite, J., concurs.
Hanni, J., concurs.

Case No. 24 MA 0019

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas, Probate Division of Mahoning County, Ohio, is not contrary to the manifest weight of the evidence. For the forgoing reasons, the probate court's decision is affirmed. Costs to be taxed against the Appellants.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**