[Cite as *In re Adoption of A.J.L.*, 2025-Ohio-2401.]

# IN THE COURT OF APPEALS OF OHIO
# ELEVENTH APPELLATE DISTRICT
# PORTAGE COUNTY

| | |
|---|---|
| IN THE MATTER OF:<br><br>THE ADOPTION OF A.J.L. | **CASE NO. 2025-P-0012**<br><br>Civil Appeal from the<br>Court of Common Pleas,<br>Probate Division<br><br>Trial Court No. 2024 AD 00040 |

## OPINION AND JUDGMENT ENTRY

Decided: July 7, 2025
Judgment:  Affirmed

*Corinne Hoover* and *Rachel L. Smick*, Hoover Kacyon, LLC, 527 Portage Trail, Cuyahoga Falls, OH 44221 (For Appellants, Eileen Mary Leskovec and Keith Anthony Leskovec).

*Leslie S. Graske*, 54 East Mill Street, Suite 201, Akron, OH 44308, and *Rebecca Sremack*, 2745 South Arlington Road, Akron, OH 44312 (For Appellees, Taylor Marie LeMasters and Craig Ryan LeMasters).

*Cecily J. Mullins*, Megargel, Eskridge & Mullins, LLP, 231 South Chestnut Street, Ravenna, OH 44266 (Guardian Ad Litem).

SCOTT LYNCH, J.

{¶1}    Appellants, Eileen and Keith Leskovec, appeal from the judgment of the Portage County Court of Common Pleas, Probate Division, denying their petition for adoption and granting appellees, Craig and Taylor LeMasters', petition for adoption.  For the following reasons, we affirm the decision of the court below.

{¶2}    A.J.L., born April 6, 2021, is the biological daughter of Kevin and Kera Leskovec, who died in 2021.  After their deaths, A.J.L. began living with her maternal uncle,

Craig LeMasters, and his wife, Taylor.  On October 10, 2023, the Portage County Court of Common Pleas, Probate Division, appointed Craig to serve as A.J.L.'s guardian.  The court granted Keith and Eileen Leskovec, A.J.L.'s paternal grandparents, standard visitation.

{¶3}  The LeMasterses and the Leskovecs filed competing petitions for the adoption of A.J.L. on June 7, 2024, and August 2, 2024, respectively.  At a December 3, 2024 hearing, the parties presented the following pertinent testimony:

{¶4}  Craig testified that, following Kera and Kevin's deaths, Craig and Taylor moved into their residence with A.J.L. for approximately two years before moving to a new home.  A.J.L. currently visits with the Leskovecs every other weekend and on Wednesdays.  Craig testified that A.J.L. is bonded with the Leskovecs and it is important for her to continue having contact with them.  He indicated that he had previously raised concerns with the visitation schedule but, if their petition was granted, the LeMasterses would continue "essentially the status quo" regarding visitation.

{¶5}  Craig testified that the LeMasterses and Leskovecs had some conflict regarding A.J.L., although the couples are "civil most of the time."  He indicated that the Leskovecs had raised their voices in front of A.J.L. at some visitation transfers and have difficulty compromising.

{¶6}  Taylor testified that the LeMasterses had some difficulty communicating with the Leskovecs and she felt they were fighting for control of A.J.L.  She indicated that the LeMasterses had invited the Leskovecs to attend holiday events with A.J.L. on some occasions.

{¶7}  Denise LeMasters, A.J.L.'s maternal grandmother, testified that A.J.L. is bonded with the LeMasterses and the Leskovecs.  The LeMasterses told her they would continue to allow visitation with the Leskovecs if the court granted their petition.

{¶8} Eileen Leskovec testified that she continued to have a relationship with A.J.L. after Kevin's death. She believed the LeMasterses were always watching the Leskovecs when they were interacting with A.J.L. She expressed concerns about A.J.L.'s speech, development, and various health issues which she felt the LeMasterses did not properly address. Eileen believes visitation would end if the court granted the LeMasterses' petition.

{¶9} Lynne Leskovec, A.J.L.'s paternal aunt, indicated that she believed there was a lack of communication and trust with the LeMasterses, who had denied her visitation with A.J.L. in the past. She believed that if the court granted adoption in favor of the LeMasterses, her family would not see A.J.L. again.

{¶10} Cecily Mullins, the guardian ad litem, recommended that the court deny both petitions. She did "not have faith [that the present relationships] will continue in the event that either side has complete control," and observed tension between the parties. She questioned the LeMasterses' claims that they would continue visitation due to their past complaints about the schedule. She believed the parties are all bonded to A.J.L. and it is in her best interest to maintain a relationship with all of her relatives. She opined that the need to continue visitation outweighs the need for permanency.

{¶11} Kim Stewart, the adoption assessor, performed home studies with the parties and indicated that they are all appropriate adoptive parents. Stewart testified that A.J.L.'s needs are currently met and she believes A.J.L. needs permanency.

{¶12} On January 30, 2025, the trial court issued a final decree of adoption granting the LeMasterses' petition and denying the Leskovecs' petition. The court found the following: the Leskovecs "have not met their burden of introducing sufficient evidence to establish that [A.J.L.'s] placement with the LeMasters is not the least detrimental alternative"; the Leskovecs did not "overcome the LeMasters' objections to their adoption

petition"; and the LeMasterses' adoption of A.J.L. was in her best interest.

{¶13}  The Leskovecs timely appeal and raise the following assignments of error:

{¶14}  "[1.] The trial court erred in determining it was in the child's best interests to be adopted by the LeMasters."

{¶15}  "[2.]  The trial court erred as a matter of law in conflating the burdens of proof finding that Appellants had not met their burden of proof in contesting the adoption when the burden of proof was ultimately on the Appellees."

**Best Interest of the Child**

{¶16}  In their first assignment of error, the Leskovecs argue that the trial court erred in finding the LeMasterses' adoption of A.J.L. was in her best interest and "by not finding that the least detrimental alternative . . . was the denial of both competing adoption petitions, which would allow both [families] the opportunity to remain active participants in this young child's life."

{¶17}  "A two-step process is utilized in an adoption proceeding": the consent phase and the best interest phase.  *In re Adoption of Tucker*, 2003-Ohio-1212, ¶ 10 (11th Dist.). "Generally, a petition to adopt a minor child may be granted only if written consent is executed by the mother and father of the child."  *Matter of Adoption of L.M.C.*, 2023-Ohio-3119, ¶ 16 (11th Dist.).  A biological parent's death obviates the need to obtain consent. *In re Adoption of Rader*, 2004-Ohio-1709, ¶ 6 (11th Dist.).  Since A.J.L.'s biological parents are deceased, we proceed to consider her best interest.

{¶18}  "Adoptions are decided on a case-by-case basis" and "[t]he trial court determines, in its discretion, if the adoption is in the best interest of the child."  *Tucker* at ¶ 10, citing *In re Adoption of Charles B.*, 50 Ohio St.3d 88, 90 (1990) ("adoption matters must be decided . . . through the able exercise of discretion by the trial court giving due

consideration to all known factors"). "A reviewing court will not reverse a trial court's exercise of its considerable discretion in an adoption case unless the trial court acted in an unreasonable, arbitrary, or unconscionable manner." *Tucker* at ¶ 11.

{¶19} "A trial court must consider the factors set forth in R.C. 3107.161(B) when making a determination in a contested adoption." *L.M.C.* at ¶ 37. The following R.C. 3107.161(B) factors are pertinent here: "[t]he least detrimental available alternative for safeguarding the child's growth and development"; the age and health of the child; whether the child will be able to enter into a more permanent family relationship; the importance of providing permanency, stability, and continuity of relationships; the child's interaction and interrelationship with any person who may significantly affect her best interest; and the child's adjustment to her current home, school, and community.

**Least Detrimental Alternative**

{¶20} The Leskovecs' first contention is that the trial court should have denied both petitions since this is the "least detrimental alternative," allowing both families to remain active participants in A.J.L.'s life. They argue that "appellate districts across the state have adopted this approach in denying adoption petitions where there are other beneficial legal relationships a child could enjoy without the granting of adoption."

{¶21} We do not find that the authority cited by the Leskovecs supports reversal. In *Matter of Adoption of M.R.M.*, 2017-Ohio-7710 (7th Dist.), the Seventh District concluded that the trial court did not abuse its discretion in denying a stepfather's petition for adoption. The court acknowledged the benefits of having many supportive relatives and concluded that the biological father demonstrated denial of the petition was the "least detrimental alternative" given his testimony that the child's best interest would be satisfied by allowing regular visitation with him. *Id.* at ¶ 47, ¶ 52-54. Several appellate courts have similarly

found no abuse of discretion in denying a petition for adoption where it would terminate a child's relationship with his or her biological parents. *Matter of the Adoption of J.A.M.*, 2022-Ohio-2313, ¶ 16 and 33 (2d Dist.) (the least detrimental alternative was to keep the child in a stable environment while renewing a relationship with his biological mother); *In re C.B.*, 2013-Ohio-1354, ¶ 12 (6th Dist.) (denial of the petition for adoption would result in a total severance of the biological mother's parental rights); *In re B.M.S.*, 2011-Ohio 714, ¶ 26 (10th Dist.). *See also In re Adoption of M.R.P.*, 2022-Ohio-1631, ¶ 44 (12th Dist.) (granting the stepfather's petition was not the least detrimental alternative because it would terminate the child's relationship with her biological father and paternal relatives).

{¶22} In considering the foregoing authorities, we emphasize that an appellate court must evaluate whether the trial court abused its discretion in ruling on an adoption petition and "is not free to merely substitute its judgment for that of the trial court." *In re Jane Doe 1*, 57 Ohio St.3d 135, 137-138 (1991). The foregoing authorities do not hold that a trial court is *required* to deny an adoption petition if other relatives are involved in a child's life but instead find *no abuse of discretion* in doing so. It does not follow that it is an abuse of discretion to reach the opposite result, particularly since courts consider adoption matters on a case-by-case basis. *Charles B.*, 50 Ohio St.3d at 94. For example, in *Matter of Adoption of B.L.F.*, 2021-Ohio-1926 (4th Dist.), the appellate court held that, "after considering the totality of the best-interest factors, the trial court could have rationally determined that granting the adoption is in the child's best interest, even though it meant terminating the legal relationship between [grandmother] and the child." *Id.* at ¶ 47. The same is the case here.

{¶23} Significantly, the cases cited by the Leskovecs explicitly recognize the right of biological parents to the care and custody of their child. "The right of a natural parent to

the care and custody of his children is one of the most precious and fundamental in law." *In re Adoption of Masa*, 23 Ohio St.3d 163, 165 (1986). Courts are cautious in exercising the authority to terminate this right. In the present matter, such concerns do not exist. While grandparents have the right to visitation in some instances, they do not have the same fundamental rights as a natural parent, nor do they have a constitutional right of association with their grandchildren. *In re Goff*, 2003-Ohio-6768, ¶ 15 (11th Dist.). As the Ohio Supreme Court has held, "the purpose of the adoption proceeding is not to protect the grandparents' rights" but to determine the child's best interest. *In re Adoption of Ridenour*, 61 Ohio St.3d 319, 330-331 (1991).

{¶24} While a child's relationship with her grandparents is certainly a relevant consideration in a best interest analysis, it must be weighed with many other considerations, including the need for permanency. *See Matter of Adoption of Z.B.*, 2024-Ohio-4644, ¶ 23 (10th Dist.) (requiring consideration of the benefit of permanency to the child and noting that "preserving the status quo preserves uncertainty in [the child's] future"); *Ridenour* at 324 ("delaying and deterring adoption" can "deprive children of the stability and security which they need to become productive and well-adjusted"). Further, there was testimony from several witnesses that the LeMasterses would not deny the Leskovecs the ability to visit with A.J.L., mitigating this detriment. While the guardian ad litem and Leskovecs expressed concerns that the LeMasterses may not allow visitation, the court could certainly choose to credit the testimony of the LeMasterses and their witnesses in reaching its decision. In adoption matters, the trier of fact "is in a far better position to observe the witnesses' demeanor and weigh their credibility." *In re Adoption of E.G.C.*, 2023-Ohio-3563, ¶ 23 (12th Dist.); *Tucker*, 2003-Ohio-1212, at ¶ 11 (11th Dist.).

Case No. 2025-P-0012

**Best Interest Analysis**

{¶25} The Leskovecs also argue that the court's decision was against A.J.L.'s best interest when weighing all of the pertinent factors. The trial court indicated that it considered the requisite factors under R.C. 3107.161(B). It emphasized that A.J.L. had become a part of the LeMasterses' family over the past three years and they have done a "good job . . . in safeguarding [her] growth and development." The testimony of the guardian ad litem and the adoption assessor tended to indicate that the LeMasterses were suitable and effective parents to A.J.L., although there were some difficulties in the ability of the LeMasterses and the Leskovecs to communicate with each other. The trial court also noted the adoption assessor's recommendation for permanency. These facts supported the trial court's determination. While Eilleen testified about concerns regarding A.J.L.'s medical care and development, the court was free to reach a determination that A.J.L. was doing well in her current environment based on the totality of the testimony. It is evident from the court's decision that it placed significant weight on A.J.L.'s need for stability and permanency, which is especially important here where both of her biological parents passed away. We find no abuse of discretion in the best interest determination.

{¶26} The first assignment of error is without merit.

**Burdens of Proof**

{¶27} In their second assignment of error, the Leskovecs raise arguments relating to the applicable burdens of proof. First, they contend that the trial court found the "Leskovecs had not met their burden of introducing sufficient evidence to establish that the child's placement with the LeMasters is not the least detrimental alternative" when it should have considered that "there is . . . a 'third option' of the child remaining in her current placement but under the existing guardianship orders."

**Least Detrimental Alternative Burden**

{¶28} Former R.C. 3107.161(C), in effect when the trial court issued its judgment, provided that "[a] person who contests an adoption . . . must establish that the child's current placement is not the least detrimental available alternative." *See also In re Wagner*, 1999 WL 689971, *11 (11th Dist. Jun. 30, 1999). In relation to the LeMasterses' petition, the court correctly stated that the Leskovecs carried the burden to demonstrate the placement with the LeMasterses was not the least detrimental alternative. The authorities cited by the Leskovecs recognize this burden. *M.R.M.*, 2017-Ohio-7710, at ¶ 49 (7th Dist.); *J.A.M.*, 2022-Ohio-2313, at ¶ 11 (2d Dist.). The Leskovecs essentially reassert their argument here that the court should have considered the third option of not granting either petition. As addressed in the first assignment of error, the court did not abuse its discretion by deciding that adoption by the LeMasterses was the least detrimental alternative. There is nothing in the record to demonstrate that the court did not consider the options of granting either petition or denying both and it recognized the guardian ad litem's recommendation to deny both petitions. However, it ultimately determined that adoption by the LeMasterses would be in the best interest of A.J.L., which was not an abuse of discretion.

**Best Interest Burden**

{¶29} Second, the Leskovecs argue that "the trial court's decision further conflates the issue when it failed to address whatsoever that it was in fact the LeMasters' burden to prove that the adoption was in the best interest of the child and that there was not a le[ss] detrimental alternative available."

{¶30} Former R.C. 3107.161(C) provides that "[a] person who contests an adoption has the burden of providing the court material evidence needed to determine what is in the best interest of the child." To the extent that the LeMasterses had the burden to

Case No. 2025-P-0012

demonstrate best interests in relation to the Leskovecs' opposing petition for adoption, we do not find reversible error.  The court correctly stated the foregoing law.  Further, it is evident that the trial court considered the entirety of the evidence on the best interest factors, since it outlined in detail the testimony presented by both sides.

{¶31}  The second assignment of error is without merit.

{¶32}  For the foregoing reasons, the judgment of the Portage County Court of Common Pleas, Probate Division, granting the LeMasterses' petition for adoption and denying the Leskovecs' petition for adoption, is affirmed.  Costs to be taxed against appellants.


JOHN J. EKLUND, J.,

EUGENE A. LUCCI, J.,

concur.

# JUDGMENT ENTRY

For the reasons stated in the Opinion of this court, the assignments of error are without merit. The order of this court is that the judgment of the Portage County Court of Common Pleas, Probate Division, is affirmed.

Costs to be taxed against appellants.

JUDGE SCOTT LYNCH

JUDGE JOHN J. EKLUND,
concurs

JUDGE EUGENE A. LUCCI,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.